## OWENS v. THE OCEAN ACCIDENT & GUARANTEE CORPORATION, LTD.

### 4-4785

Opinion delivered November 8, 1937.

Tom F. Digby, for appellants.

House, Moses & Holmes and Richard C. Butler, for appellee.

GRIFFIN SMITH, C. J. Appellants conduct a funeral home, and in connection with their business operate an ambulance or invalid coach.

Appellee, in 1934, issued its policy of insurance, under the terms of which it became liable to appellants for damages on account of bodily injuries, including death at any time resulting therefrom, and loss of services in consequence of such injuries sustained by any person or persons, caused by the ownership, maintenance, or use of a certain Henny ambulance invalid coach, as described in said policy. The contract further provided that the insurer would investigate any claim for such injury or damage and negotiate settlement thereof, and would defend suits arising from any such injury or damage, and would pay all costs incurred in the defense of suits, so instituted, growing out of the ownership, maintenance, or use of said motor vehicle, even if such actions were groundless.

In 1935, at a time when the insurance was in force, the ambulance identified in the policy was sent by appellants to the home of Mrs. Mollie Mason in North Little Rock for the purpose of transporting Mrs. Mason to the Baptist State Hospital. The ambulance was parked on the street in front of Mrs. Mason's home. A cot, utilized as a part of the ambulance equipment, was taken therefrom and Mrs. Mason was placed on it. While the cot was being so utilized in carrying Mrs. Mason from her home to the ambulance, she was carelessly allowed to fall from the cot to the pavement just as the attendants or servants were passing with the patient from the yard to the sidewalk. Appellee was promptly notified of the accident.

Subsequently, suit for damages to compensate for the injuries sustained was filed by Mrs. Mason against appellants. Appellee was notified that suit had been filed, but it declined to defend, assuming that under the terms of the insurance contract it was not obligated.

Appellants thereupon employed an attorney, who for $306 effectuated a settlement of Mrs. Mason's $30,000 claim. The attorney's fee was $250.

This appeal is from the action of the Pulaski circuit court, second division, wherein the judge, sitting as a jury by agreement of the parties, found that the policy issued by appellee did not apply to an accident sustained in the manner and in the circumstances herein stated.

Appellee relies upon a Tennessee case, *J. H. Hinton & Son* v. *Employers' Liability Assurance Corporation,* 166 Tenn. 324, 62 S. W. (2d) 47, the facts there being almost identical with those now before us. Mrs. Bell Hall, for the purpose of being conveyed from her home to a hospital, was placed on a stretcher taken from an ambulance, and while being taken to the ambulance an attendant negligently permitted the stretcher to fall, injuring Mrs. Hall. Suits were filed against the ambulance company, which were successfully defended, after the Employers' Liability Assurance Corporation had denied liability under its policy. The suit of Hinton & Son against the Employers' Liability Assurance Corporation was to recover court costs and attorneys' fees incurred in defending the suit brought by Mrs. Hall. The Supreme Court of Tennessee held that the insurance company was not liable. The clause of the insurance contract, claimed by Hinton & Son to be applicable, indemnified against damages "resulting from the ownership, maintenance, operation, or use" of the ambulance. Citing I Couch, Cyc. of Insurance Law, 174, the Tennessee court said: "This general and broad language must be construed with reference to the subject-matter and the nature of the risk involved, with due regard to the objects and intentions of the parties as the same may be gathered from the whole instrument."

In arriving at a determination of non-liability, the Tennessee court reviewed *Panhandle Steel Products Co.* v. *Fidelity Union Cas. Co.,* (Texas Civ. App.), 23 S. W. (2d) 799, and *Quality Dairy Co.* v. *Fort Dearborn Casualty Underwriters,* (Mo. App.), 16 S. W. (2d) 613. In the Texas case, liability was affirmed in favor of a pedestrian who had been struck by an iron beam while the beam was being unloaded from a parked truck.

It was held that the accident resulted from the "use of the truck" within the meaning of the insurance contract. The Texas court said: "It will be noted, further, that the language used in the liability clause of the policy is broad and general in its scope, and not restricted by any words to the effect that the injuries covered by that clause must be the 'proximate' result of the use of the truck, or that the injury must be sustained while the truck was being driven, or the result of collision or overturning."

In the Quality Dairy (Missouri) case, the court held that the obligation incurred by the insurer under a policy employing the words "by the reason of ownership, maintenance, or use" of an automobile was not limited to cases where the truck itself produced the injury, but that the contract was expressly drawn in terms broad enough to cover all claims arising by reason of the use of the truck.

In the Texas case, the facts showed that at the time the pedestrian was injured, the truck was backed up to the curb, and the iron beam was being moved across the sidewalk into the building. When about one-half of the beam was off of the truck, the accident occurred. The Tennessee court, in distinguishing between the cases, said: "If the accident assigned by Mrs. Hall as the cause of her injury had occurred while the stretcher was being placed in the ambulance, or while it was being removed therefrom, we would be strongly inclined to follow that case, and hold it the result of the use of the ambulance. But the authorities and liberal rule of construction cited do not, in our opinion, justify the further extension of the terms of the contract, so as to include the accident in suit. When the stretcher was dropped, the ambulance had not been reached. Mrs. Hall was being transported to the ambulance, and not by it or on it. The transportation of sick persons from bed to street curb was a necessary incident to the conduct of complainant's business of operating an ambulance for hire, but was not a necessary incident to the operation or use of the ambulance as a motor vehicle,

as the actual placing or removal of persons therein and therefrom would be. Complainants were insured against liability arising from the operation and use of the vehicle, and not against liability arising from the conduct of their business." See, also, *Commonwealth Casualty Company* v. *Headers,* 118 O. St. 429, 161 N. E. 278; *Caron* v. *American Motorists Insurance Company,* 277 Mass. 156, 178 N. E. 286; *Luchte* v. *State Automobile Insurance Company,* 50 Ohio App. 5, 197 N. E. 421.

It will be observed that the contract construed by the Supreme Court of Tennessee contained the words, "By the reason of ownership, maintenance, or use." In the policy written by appellee in the instant suit, it affirmatively appears that the automobile covered by the insurance is a commercial vehicle identified as "one Henney ambulance invalid coach," and it is shown in the policy that appellants are engaged in the undertaking business. The following definitions then appear in the policy: "(a) The term 'pleasure' is defined as personal, pleasure and family use, including business calls. (b) The term 'commercial' is defined as the transportation or delivery and the loading and unloading of goods or merchandise in direct connection with the assured's occupation or business."

In the Hinton case, discussed *supra,* the Tennessee court felt that allowance of recovery would require that "terms of the contract be further extended." Therefore, the decision rests upon the proposition that there could be no liability unless the automobile, *per se,* had been the efficient cause of the accident, or unless the event with which its use was associated had been so closely allied to or connected with the automobile as to justify a finding that effect flowed as a natural sequence to cause, one being the complement of the other. With this general principle we are in accord. We are also in agreement with the express holding in the Hinton case that "The transportation of sick persons from bed to street curb was a necessary incident to the conduct of the business, but was not a necessary incident to the operation or use of the ambulance as a motor vehicle."

But, conceding the correctness of these conclusions, does it imperatively follow that liability can only arise in those cases where the negligence upon which an action is predicated occurred at a time when the automobile was being used as a necessary incident to its operation as a motor vehicle? Obviously, there are lawful and logical uses to which a commercial vehicle may be put which are not necessarily incident to its operation as such; yet, an incidental use of such vehicle might be the predominating cause of loss, even though, in point of time or distance, it was not the nearest agency in contact with effect.

"Ownership, maintenance, and use" are general terms. These words were selected by the insurer to indicate or circumscribe the scope of coverage contemplated; and, where such expressions are adopted, it is not a perversion or extension of the contract, when applied to the instant case, to say that, although use of the stretcher to convey Mrs. Mason from her home to the waiting ambulance was not a necessary incident to use of the automobile as a motor vehicle, it was an essential transaction in connection with use of the automobile as an ambulance. When we add to these conclusions appellee's knowledge that the vehicle insured was, by express terms of the contract, to be used as an ambulance, it necessarily follows that any transaction so closely identified with the operation of the vehicle as an ambulance as to form a link in its general utility and functions would fall within the purview of the risk insured against, and appellee would become liable.

In the view that we have taken, it is not necessary to discuss the language of appellee's contract appearing in subdivision "(b)," defining the term "commercial" as pertaining to the transportation or delivery and the loading and unloading of goods or merchandise in direct connection with the assured's occupation or business. Such discussion is pretermitted for the reason that the accident to Mrs. Mason did not occur while the stretcher was in contact with the ambulance. We prefer to place the decision upon the ground that use of the stretcher at

the time and in the manner shown was an incident to the use of the vehicle as an ambulance, it having been admitted by stipulation that the stretcher or cot was a part of the equipment.

The judgment is reversed, and the cause remanded with instructions to enter judgment consistent with this opinion.