Wayne APPLEHANS, Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Appellee.

BEATRICE FOODS CO., a corporation,
d/b/a Beatrice Cold Storage,
Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Appellee.

Nos. 9413, 9414.

United States Court of Appeals
Tenth Circuit.

Feb. 5, 1968.

Gus Rinehart and David J. Morrison, Oklahoma City, Okl., for appellant Wayne Applehans.

Paul C. Duncan, Jr., Oklahoma City, Okl. (Joanna S. Sepkowitz, Oklahoma City, Okl., with him on the brief), for appellant Beatrice Foods Co.

Kenneth N. McKinney, Oklahoma City, Okl., for appellees.

Before PICKETT, HILL and SETH, Circuit Judges.

PICKETT, Circuit Judge.

Marvin Stokes, employed by Farmers Trucking Association of Oklahoma City, Oklahoma as a truck driver, instituted this action against Beatrice Foods Company to recover damages for injuries incurred while he was on the premises of Beatrice to pick up a quantity of frozen food for delivery in Chicago, Illinois. The complaint alleges that the injuries were incurred by the negligence of appellant Applehans, an employee of Beatrice, while conveying the frozen food to the warehouse dock preparatory to its being loaded onto the truck driven by Stokes. Beatrice brought Applehans into the action by third-party proceedings, and Allstate, the insurer of the truck driven by Stokes, intervened. Stokes' claim was settled, and by stipulation the case was presented to the trial court as a declaratory judgment action for the purpose of determining whether Applehans was an insured within the omnibus provisions of the Allstate policy. The trial court, holding that there was no causal connection between the negligent act of Applehans and the "use" of the truck, decreed that the Allstate policy did not cover the negligent acts of Applehans.[1]

1. The trial court stated:

"In the instant case there was no direct and proximate causal connection between the negligent act of Appelehans and the "use" of the truck. In order to extend the coverage of the truck insurance to Applehans, it would be necessary to create a legal fiction since he

Prior to his injuries, Stokes had been directed by his employer to obtain a load of frozen meat from the Beatrice cold storage docks in Denver, Colorado, and upon arrival parked his truck in a loading position. Applehans, using an automatic fork lift owned by Beatrice, transported the pallets of frozen meat from Beatrice's meat lockers to the dock. Stokes and a fellow employee, using a smaller fork lift, transferred the meat to the truck. While the meat was being moved from the warehouse to the dock, Stokes was struck and injured by the fork lift operated by Applehans.

Allstate's motor vehicle liability policy covered various motor vehicles owned by Farmers, including the truck driven by Stokes. The pertinent provisions of this policy are:

"I Coverage A—Bodily Injury Liability.

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, *including death at any time resulting therefrom,* sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

Purpose of Use Defined.

* * * (c) Use of the automobile for the purposes stated includes the loading and unloading thereof. * *

V Definition of Insured.

(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either * * *."

It is the contention of Beatrice and Applehans that under Oklahoma law the "use" provisions of the policy extend to the complete process of loading the insured truck, and included the activities of Applehans. In Penley v. Gulf Ins. Co., Okl., 414 P.2d 305, 310, the court, after referring to the "coming to rest" doctrine, said:

"The other view is the so-called 'complete operation' doctrine, which holds that 'loading and unloading' includes the entire process involved in the movement of the articles from the place where insured's employees find the articles, which are to be moved by truck to the place where the employees of insured turn them over to the party to whom they are to make delivery.

The parties have not cited, nor have we found, a case that discloses which doctrine this state has adopted or followed. A majority of the states follow the 'complete operation' theory and we believe said rule should be adopted by this Court."

It is clear that Oklahoma has accepted the more liberal "complete operation" theory which expands the term "use" of

was not "using" the truck within the ordinary meaning of the unambiguous terms of the policy.

On the contrary, the acts performed by Applehans related exclusively to his own employment. The insured truck was under the exclusive control of Stokes and his fellow employee. At no time did Applehans have anything to do with the truck, directly or indirectly, or with it "use", *or the loading or unloading thereof* as these terms are ordinarily understood. He was in no sense engaged in "using" the truck. He was not loading or helping to load it. Nor was he in any manner supervising the loading. Under the agreed facts he had no control whatever over the truck or the loading thereof at any time.

The accident was the direct result of an intervening cause wholly remote from the "use" of the truck. The coverage provided under the loading and unloading clause of the policy could not have been intended to apply to such a situation. Applehans was using his own employer's machinery and was on his own employer's property. The accident arose out of the "use" of Beatrice's fork lift by Applehans and not the "use" of the truck.

the insured vehicle to include some acts in which the truck was not directly involved. This leaves the problem of determining what movement of articles in the course of loading and unloading an insured vehicle constitutes "use" of the vehicle within the meaning of that doctrine. It was agreed that Applehans was transferring the meat from the locker room to the dock in order that Stokes and his fellow employee might load it onto the truck. This preparatory function was undertaken entirely by Applehans with his employer's machinery.

This court, in a recent Oklahoma case, said: "In order for coverage to exist under the loading or unloading clause of the policy of liability insurance, it must not only appear that the accident which resulted in an injury occurred during the loading or unloading period but that the accident was causally connected with the loading or unloading." Industrial Underwriters Ins. Co. v. P & A Construction Co., 10 Cir., 382 F.2d 313, 316. In that case, pipe for a transmission line was delivered to a job site by the insured truck. The pipe was unloaded in the field by the construction company, using its own caterpillar tractor equipped with a side-boom, or hoist, attachment. The side-boom was being raised preparatory to moving the tractor forward to unload another joint of pipe, when it fell and injured an individual who was an employee of Oklahoma Natural Gas Company, for which the pipeline was being laid. It was held that the liability policy covering the truck did not extend to the operator of the boom because there was no causal connection between the falling boom and the loading and unloading process. The decision is controlling here because the negligence of Applehans resulting in the injury to Stokes, although occurring during the loading process, was an intervening cause wholly disassociated and independent from the use of the insured truck. Cf. Culp v. Northwestern Pac. Indem. Co., 10 Cir., 365 F.2d 474. In the Penley case, the Oklahoma Supreme Court, while not announcing a test for determining causal connection, recognized the need for a causal connection be-

tween the "use" of the truck and the accident. The court simply found that such a relationship existed in that case. Furthermore, it appears that the Oklahoma Supreme Court, in defining the limits within which the "complete operation" doctrine shall be applicable, confines the process to "the movement of the articles from the place where insured's employees find the articles, which are to be moved by truck, to the place where the employees of insured turn them over to the party to whom they are to make delivery." (414 P.2d 310). Stokes found the articles to be moved by his truck on Beatrice's loading dock where they had been placed by Applehans.

Affirmed.