**HORN LUMBER COMPANY, Inc.,**
**Plaintiff,**

v.

**The TRAVELERS INDEMNITY COM-**
**PANY, Defendant.**

**Civ. A. No. 1107.**

United States District Court
W. D. Arkansas,
Hot Springs Division.
April 24, 1968.

**374**

Shaw, Jones & Shaw, Fort Smith, Ark., for plaintiff.

Wright, Lindsey & Jennings, Little Rock, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

This suit for declaratory judgment on an insurance policy is now before the court on cross motions for summary judgment.

On March 31, 1966, Marion T. Davis was an employee of Perini, M-K, Leavell (Perini), a construction company engaged in the construction of a United States Government project on the Arkansas River in the State of Oklahoma. Perini had purchased some lumber from the Horn Lumber Company (Horn), which was delivered to the job site by an employee of Horn, and the lumber was being unloaded from Horn's truck by employees of Perini. Perini's employee was utilizing a crane in unloading the lumber from the truck, and in lifting a bundle of the lumber, the metallic bands broke, and the lumber fell from the crane and struck Davis.

On August 28, 1967, Mrs. Nell Davis, as Administratrix of the estate of her deceased husband, commenced a suit, Civil No. 1095, against Horn to recover damages for the death of the decedent. Horn had two policies of liability insurance, which it thought insured it against any such claim for damages. Horn made demand on each of the two insurance companies, one of which being the defendant, The Travelers Indemnity Company (Travelers), to defend the suit of Davis, Administratrix, and to pay any judgment which might be rendered therein. Travelers refused the demand, and on December 13, 1967, Horn instituted this action seeking judgment against Travelers for damages and for declaration "that the defendant has a duty to defend Civil No. 1095 and to pay any judgment rendered in said case up to the limits of its liability under the terms of its insurance contract."[1]

---

1. The other insurance company, Bituminous Casualty Corporation, on October 23, 1967, commenced suit against Horn for declaratory judgment of non-liability. That case, at the suggestion of all parties was consolidated with the instant case because it appeared that a common question of fact existed. Notwith-standing the underlying facts are identical, the court believes that the provisions of the policies involved and the allegations made with reference thereto in the two cases are sufficiently different to warrant the filing of separate opinions. See Bituminous Casualty Corp. v. Horn, D.C., 283 F.Supp. 365. Most of the facts

The material allegations in the complaint in the instant case are as follows: that the automobile liability policy in question was issued by the defendant to the plaintiff; that on August 28, 1967, Nell Davis, Administratrix of the Estate of Marion T. Davis, deceased, filed a complaint against Horn, praying damages in the amount of $180,000; that the Davis complaint alleged that Marion T. Davis was killed as a result of an accident which occurred during the unloading of some lumber from a truck owned by Horn (the truck upon which the policy was issued); that the complaint alleged that the injuries and death of Marion T. Davis were caused by improper packaging of said lumber; that other specific acts of negligence on the part of Horn were alleged; that the defendant, Travelers, was notified of the accident and the pendency of the Davis suit; that demand was made on Travelers to defend the suit and to pay any judgment which might be rendered therein up to the limits of liability stated in the policy; that Travelers refused the demand; and that because of such refusal the plaintiff was required to use at its expense its own attorney to represent it in the Davis case and in the instant case.

The complaint then prayed for judgment declaring Travelers liable on the policy and for $15,000 in damage which resulted from plaintiff's having to employ its own attorney.

In its answer the defendant admitted the following: that the policy was issued and was in force at the time of the accident; that the Davis suit was filed against Horn; that demand was made on Travelers to defend that suit and to pay any judgment up to the limits stated in the policy; that it refused said demand; and that Horn had to employ its own attorney.

The defendant denied it is in anyway liable to the plaintiff and alleged that the Davis complaint seeks damages for alleged breach of warranty relating to

packaging, binding and inspecting the fatal bundle of lumber; that recovery is not sought from Horn by reason of liability arising out of the ownership, maintenance or use of the insured truck; and that the policy in question does not provide coverage with respect to the claims asserted against Horn in the Davis complaint.

The court has jurisdiction by virtue of the amount in controversy and diversity of citizenship. The case is properly before the court on cross motions under Rule 56, Fed.R.Civ.P., for summary judgment as the pleadings and admissions on file in the instant case and in Bituminous, supra, show that there is no genuine issue as to any material fact and that the only question now before the court is one of law.

■ Whether an insurer has a duty to defend a suit brought against an insured depends on whether or not the complaint states a claim against the insured for damages resulting from acts covered by the terms of the policy. See Equity Mutual Ins. Co. v. Southern Ice Co. (1960) 232 Ark. 41, 334 S.W.2d 688, quoted at some length in Bituminous, supra.

In Bituminous the court held that the Davis claim was founded on products liability and/or negligence with respect to unloading the vehicle. It was not determined which one or both were involved because, by the terms of that policy, coverage for both was specifically excluded. This is not the case with respect to the Travelers policy which neither specifically covers nor excludes from coverage liability for damages arising out of products hazard or unloading the vehicle.

■ The Bituminous policy is one of general liability coverage for Horn, whereas the Travelers policy covers automobile liability only. It is the opinion of the court, and the plaintiff makes no argument to the contrary, that this policy affords no coverage for products hazard. Therefore, all claims in the

surrounding the injury and death of Marion T. Davis are set forth in Bitumi-

nous, supra, and are reiterated here only to the extent necessary for clarification.

Davis complaint with respect to binding, packaging and inspecting the lumber are not covered by the Travelers policy. The sole issue before the court then is whether the allegations in the Davis complaint state a claim which is covered by the following clause in the Travelers policy:

"1. Coverage A—Bodily. Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and *arising out of the ownership, maintenance or use of the automobile.*" (Emphasis added.)

 Or, stated more specifically: Does the Davis complaint state a claim upon which relief may be granted, *such claim being based upon or connected with the unloading of the truck?* The court is of the opinion that it does not and that no coverage is afforded by the Travelers policy.

The allegations in the Davis complaint which are material to the instant suit are as follows:

" * * * on or about the 31st day of March, 1966, * * * the decedent, Marion T. Davis, * * * was engaged in the unloading of a truck of lumber purchased from * *͵ Horn Lumber Company, which said lumber was delivered by [Horn], and had been in the exclusive custody and control of [Horn] since the time of its packaging. That while so engaged in unloading said lumber * * *. [it] burst from its binding and packaging, and by reason of said breaking of the binding and packaging, said lumber was thrown in all directions, resulting in serious and grievous permanent injuries to the said Marion T. Davis, deceased, and ultimately caused his death." .

The above is the only reference in the Davis complaint to "unloading." There is no allegation that unloading in any

way caused the accident nor is there an allegation that Horn was in some manner negligent in unloading the truck. The only negligence alleged, and this is the entire thrust of the complaint, is with respect to the binding, packaging, and inspecting of the bundle of lumber. The only connection, as alleged in the Davis complaint, between the accident and the unloading of the truck is that unloading happened to be what was taking place when the straps binding the lumber broke.

With respect to unloading, the Davis complaint does not state a claim upon which relief may be granted, i. e., there is no claim of liability on the part of Horn. Absent such *claim* there is no coverage and Travelers has no duty to defend the suit or pay any judgment which may be rendered therein.

The issue in this case requires a consideration of the undisputed facts in determining whether the death of Marion T. Davis was caused by an accident arising out of the use of the truck.

In Appleman, Insurance Law and Practice, Vol. 7, § 4254, beginning on page 12, the learned author states:

" * * * A liability policy covers all losses for which the insured is legally liable, which are fairly within the terms of the policy, but it cannot be extended to liabilities or losses which are neither expressly nor impliedly within its terms.

"The hazard insured against under liability features is not injury to or loss of the property named in the policy, but liability or responsibility of the insured for loss or injury *caused by the use of such property.* * * *

\* \* \* \* \* \*

"An automobile liability policy will only cover casualties or claims of casualties, though groundless, arising from an accident *in which the insured automobile is involved.*" (Emphasis added.)

The policy which was issued on the truck covers claims for only those in-

juries which occur as a result of the use of that truck.

Many decisions have been written concerning the extent of the term "use" and its relation to loading and unloading the insured vehicle. The Supreme Court of Arkansas has apparently not spoken on the subject and the cases from other jurisdictions are not decisive because the result reached in every case has depended on the particular facts involved. The cases discuss the "completed operation" and "coming to rest" theories. For a brief discussion of these theories, see 7 Am.Jur.2d, § 88, and cases cited therein. They are not discussed here because the court is of the opinion that resort to either of these theories is unnecessary.

Did the truck have anything to do with the accident? This question must be answered in the negative. The lumber was delivered to the job site and left on the truck. It was lifted off the truck by a crane operated by employees of the consignee. Once so lifted the lumber had no contact with the truck whatsoever. It was after being lifted away from the truck that the straps holding the bundle broke. The lumber did not fall from the truck. The only "use" being made of the truck, after it came to a stop, was that of a table upon which the lumber rested. Even this "use" was terminated when the lumber was lifted away, at which time the truck ceased to be in any way related to the lumber which fell.

In 7 Am.Jur.2d, § 90, the learned author states:

"An accident, in order to be covered by the 'loading and unloading' clause, must not only have occurred during the process of loading or unloading but must also be causally connected with such act of loading or unloading. An accident is causally connected with the process of loading or unloading within the meaning of the clause only if the loading or unloading was the efficient and predominating cause of the accident. And in order for an accident to come within the 'loading and unloading' clause of a policy there must be a connection between the accident and the use of the vehicle insured. The vehicle must have been directly connected with the work of loading or unloading or it must have been an active factor in the operation."

We are not dealing here with a specific "loading and unloading" clause, but since Travelers concedes that the term "use" includes loading and unloading the above statement is relevant. See, Owens v. Ocean Accident & Guarantee Corp., Ltd. (1937) 194 Ark. 817, 109 S.W.2d 928.

Another reason the cases from other jurisdictions are not helpful here is because each of them involved suits against the party doing the unloading and alleging negligence with respect to the unloading operation. In some cases the defendant was the named insured. In others the defendant claimed to be an "omnibus insured" by virtue of its use of the named insured's vehicle. But in any event, the damages claimed arose out of the unloading operation. Here the Davis claim for injuries is being made against Horn who admittedly took no part in the unloading. The claim is unrelated (except in time and space) to the unloading.

The cases of Travelers Insurance Co. v. Employers Cas. Co. (Tex.Civ.App. 1963) 370 S.W.2d 105, and Applehans v. Allstate Insurance Co. (10 Cir. 1968) 389 F.2d 65, are helpful here, but they also involved a claim against the party doing the unloading. Like the instant case, they involved a vehicle used for delivery.

In Travelers, supra, a truck had carried cement to a job site. The cement was then placed in a bucket attached to a crane. When the bucket was being lifted away, the crane fell causing death to some workers. In holding that the claim arising from the accident did not come within the coverage of the cement truck's insurance, the court attempted, with questionable success, to determine whether Texas adhered to the completed-operation theory or the coming-to-rest theory. The theory chosen (a modification of "coming to rest") is not important here. What is important is the sensible ap-

proach taken by the court. At page 108 of 370 S.W.2d the court stated what this court believes to be the controlling rule, at least insofar as the instant case is concerned:

"It [the Texas theory] adheres to the principle announced in American Employers Ins. Co. v. Brock, Tex.Civ. App., 215 S.W.2d 370, to the effect that the unloading is completed when the material being unloaded is turned over to the party to whom delivery is to be made."

The decision in Applehans, supra, was based upon the following facts:

"Marvin Stokes, employed by Farmers Trucking Association of Oklahoma City, Oklahoma as a truck driver, instituted this action against Beatrice Foods Company to recover damages for injuries incurred while he was on the premises of Beatrice to pick up a quantity of frozen food for delivery in Chicago, Illinois. The complaint alleges that the injuries were incurred by the negligence of appellant Applehans, an employee of Beatrice, while conveying the frozen food to the warehouse dock preparatory to its being loaded onto the truck driven by Stokes. Beatrice brought Applehans into the action by third-party proceedings, and Allstate, the insurer of the truck driven by Stokes, intervened. Stokes' claim was settled, and by stipulation the case was presented to the trial court as a declaratory judgment action for the purpose of determining whether Applehans was an insured within the omnibus provisions of the Allstate policy. The trial court, holding that there was no causal connection between the negligent act of Applehans and the 'use' of the truck, decreed that the Allstate policy did not cover the negligent acts of Applehans.

"Prior to his injuries, Stokes had been directed by his employer to obtain a load of frozen meat from the Beatrice cold storage docks in Denver, Colorado, and upon arrival parked his truck in a loading position. Applehans, using an automatic fork lift owned by Beatrice, transported the pallets of frozen meat from Beatrice's meat lockers to the dock. Stokes and a fellow employee, using a smaller fork lift, transferred the meat to the truck. While the meat was being moved from the warehouse to the dock, Stokes was struck and injured by the fork lift operated by Applehans."

Allstate's motor vehicle liability policy provided that it would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

"Use" of the automobile for the purposes stated includes "loading" and "unloading." It was the contention of Applehans and his employer that under Oklahoma law, the "use" provisions of the policy extended to the complete process of loading the insured truck and included the activities of Applehans. In disposing of the case, the court at page 66 of 389 F.2d said:

"It is clear that Oklahoma has accepted the more liberal 'complete operation' theory which expands the term 'use' of the insured vehicle to include some acts in which the truck was not directly involved. This leaves the problem of determining what movement of articles in the course of loading and unloading an insured vehicle constitutes 'use' of the vehicle within the meaning of that doctrine. It was agreed that Applehans was transferring the meat from the locker room to the dock in order that Stokes and his fellow employee might load it onto the truck. This preparatory function was undertaken entirely by Applehans with his employer's machinery.

"This court, in a recent Oklahoma case, said: 'In order for coverage to exist under the loading or unloading clause of the policy of liability insur-

.ance, it must not only appear that the accident which resulted in an injury occurred during the loading or unloading period but that the accident was causally connected with the loading or unloading.' "

and held because the negligence of Applehans, resulting in the injury to Stokes, although occurring during the loading process, was an intervening cause wholly disassociated and independent from the use of the insured truck.

In the instant case, the undisputed facts show that the driver of the truck was in no way negligent. He was merely a bystander and was not using the truck in any manner during the unloading operation.

Before the lumber fell, it had been "turned over" to the consignee. In paragraph 8 of the Bituminous complaint, it is alleged that "prior to the time of the injuries to the decedent * * * [Horn] * * * had relinquished possession of said load of lumber to * * * [the consignee] * * * who accepted such delivery and possession, and whose servants * * * unloaded such load of lumber, the unloading operation being under the exclusive supervision and control of * * * [the consignee]. That the servant and truck operator of the defendant Horn Lumber Company, Inc., did not participate in the unloading operation and had no part therein."

Horn, in its answer filed in Bituminous, admitted this allegation.

For the reasons above stated, the court is of the opinion that the complaint in Civil 1095 of Nell Davis, Administratrix, against Horn Lumber Company does not state a claim for injuries resulting from acts or occurrences covered by the Travelers policy, and that Travelers has no duty to either defend the suit against Horn nor to pay any judgment which may be rendered therein. (See Equity Mutual Ins. Co. v. Southern Ice Co., supra.)

Therefore, judgment is being entered today granting the motion for summary judgment of the defendant, The Trav-

elers Indemnity Company, overruling the motion for summary judgment of the plaintiff, Horn Lumber Company, Inc., and dismissing the complaint at the cost of plaintiff.