SLIP OPINION



Cite as 2014 Ark. 108

# SUPREME COURT OF ARKANSAS

No. CV–13–356

DESIREE KOLBEK, AMY EDDY,
JEANETTE ORLANDO, NICOLE
FARR, SUMMER HAGAN, JAMIE
RODRIGUEZ, PEBBLES
RODRIGUEZ, SPENCER ONDRISEK,
SETH CALAGNA, JEANNE ESTATES
APARTMENTS, INC., TONY ALAMO
a/k/a BERNIE LAZAR HOFFMAN,
STEVEN JOHNSON, CHERRY HILL
PRINTING COMPANY, INC.,
ANGELA MORALES, JIM MYERS,
DAVID ROMERO, NINA ROMERO,
JENNIFER KOLBEK, JONI JOHNSON,
SUZANNE STREIT, MARTY MOAN,
ANNA MOAN, ROB WALKER, JUNE
WALKER, TWENTY-FIRST
CENTURY HOLINESS TABERNACLE
CHURCH, INC., MUSIC SQUARE
CHURCH, INC., SJ DISTRIBUTING,
INC., ACTION DISTRIBUTORS, INC.,
ADVANTAGE SALES, LLC, RITE WAY
ROOFING, INC., DONN WOLFE,
STEVE LOVELLETTE, SALLY
DEMOULIN, TERRI WHITE,
SANFORD WHITE, TOMMY
SCARCELLO, RON DECKER,
DOUGLAS "SONNY" BRUBACH, and
SHARON ALAMO

APPELLANTS

V.

TRUCK INSURANCE EXCHANGE
and FARMERS INSURANCE
EXCHANGE

APPELLEES

**Opinion Delivered** March 13, 2014

APPEAL FROM THE SEBASTIAN
COUNTY CIRCUIT COURT
[NO. CIV-2011-930]

HONORABLE JAMES O. COX,
JUDGE

AFFIRMED; MOTION TO DISMISS
DENIED.

**PAUL E. DANIELSON, Associate Justice**

Appellants Desiree Kolbeck, Amy Eddy, Jeanette Orlando, Nicole Farr, Summer Hagan, Jamie Rodriguez, Pebbles Rodriguez, Spencer Ondrisek, Seth Calagna, Jeanne Estates Apartments, Inc., Tony Alamo a/k/a Bernie LaZar Hoffman, Steven Johnson, Cherry Hill Printing Company, Inc., Angela Morales, Jim Myers, David Romero, Nina Romero, Jennifer Kolbek, Joni Johnson, Suzanne Streit, Marty Moan, Anna Moan, Rob Walker, June Walker,[1] Twenty-First Century Holiness Tabernacle Church, Inc., Music Square Church, Inc., SJ Distributing, Inc., Action Distributors, Inc., Advantage Sales, LLC, Rite Way Roofing, Inc., Donn Wolfe, Steve Lovellette, Sally Demoulin, Terri White, Sandford White, Tommy Scarcello, Ron Decker, Douglas "Sonny" Brubach, and Sharon Alamo appeal from an order of the Sebastian County Circuit Court granting summary judgment in favor of appellees Truck Insurance Exchange (TIE) and Farmers Insurance Exchange (FIE).[2]  Appellants collectively present seven arguments on appeal: (1) the circuit court erred by considering extrinsic evidence outside the pleadings, specifically evidence from an underlying case; (2) the circuit court erred by holding that the insurance carrier negated all possibility that any allegation in the underlying lawsuit might lead to an award of covered damages; (3) the

---

[1]Deceased.

[2]According to the policy at issue, TIE and FIE are members of the Farmers Insurance Group based out of California.

evidence at the very least created a material issue of fact on the insurance carrier's duty to defend; (4) the circuit court erred in deciding the insurance carrier had no duty to pay prior to the conclusion of the underlying lawsuit; (5) the circuit court erred by failing to give effect to the terms "and operations necessary or incidental to those premises" in interpreting a limitation clause in the insurance contract; (6) the circuit court erred by failing to recognize that the alleged negligence of an insured's employees constituted a potential ground for liability and mandated the duty to defend; and (7) the circuit court erred by granting summary judgment in this declaratory-judgment proceeding because at least one of the claims against the insureds was within the scope of coverage of the insurance contract. We find no error and affirm the circuit court's order of summary judgment.

The relevant facts are these. TIE issued an apartment-owners insurance policy to appellant Jeanne Estates Apartments (JEA) that became effective on July 2, 1998. From the policy period beginning August 7, 2006, FIE renewed the policy and continued to provide coverage through the 2008-2009 policy year. In 2008 and 2010, due to its connection to Tony Alamo and the Tony Alamo Christian Ministries, JEA became involved in three underlying lawsuits, which involved several of the appellants: the *Coie* case, the *Ondrisek* case, and the *Kolbeck* case. Claims for coverage were submitted by JEA to TIE/FIE in regard to those cases.

On May 20, 2011, TIE/FIE filed a complaint for declaratory judgment seeking that the circuit court find the following: that TIE/FIE owed no coverage to any person for any of the alleged misconduct that formed the basis of the claims in the underlying *Coie*, *Ondiresk*,

3

and *Kolbeck* lawsuits; that TIE/FIE owed no coverage for any person upon any refiling or renewal of said claims under a new docket number or in a new lawsuit; that TIE/FIE had no duty to provide a defense to any person who was a defendant in the underlying lawsuits; that TIE/FIE would have no duty to provide a defense to any such person should claims be renewed under a new docket number or refiled in a new lawsuit; and for all other proper relief to which they may be entitled. The complaint was subsequently amended several times; however, the prayer for relief remained the same. Several answers were also filed in response.

On June 6, 2012, TIE/FIE filed a motion for summary judgment, again requesting that the circuit court declare that they owed no coverage to any person for any of the alleged misconduct which formed the basis of the claims in the underlying lawsuits, that they would owe no coverage for any person upon any refiling or renewal of said claims under a new docket number or in a new lawsuit, that they had no duty to provide a defense to any person or entity who is a defendant in the underlying lawsuits or in a new suit, and that they had no duty to provide a defense to any such person or entity should such claims be renewed under a new docket number or refiled in a new lawsuit. The circuit court held a hearing on the motion on October 12, 2012, and issued a letter order containing its findings of facts and conclusions of law on November 5, 2012. An order granting summary judgment in favor of TIE/FIE was entered on November 26, 2012. The order was modified slightly by an agreement between the parties on January 3, 2013. The order specifically stated in pertinent part:

> 3.    The Court finds that the policy issued to Jeanne Estates Apartments, Inc.

applies only to "bodily injury," "property damage," "personal injury," or "advertising injury," which arises out of the "ownership, maintenance or use of the premises shown on the Schedule (Jeanne Estates Apartments, Inc. in Fort Smith) and operations necessary or incidental to those premises." The three tort claims underlying this declaratory judgment action do not fall within the scope of such coverage and do not involve injuries arising out of the "ownership, maintenance and use" of said Jeanne Estates Apartments, Inc.

4. The Court finds that the policy only provides coverage to "insureds," which includes the organization (Jeanne Estates apartments), its "executive officers and directors" but only with respect to their duties as officers and directors; to stockholders but only with respect to their liability as stockholders; and to employees, but only while acting within the scope of their employment or performing duties related to the conduct of the business. No covered act by any "insured" relating to the scope of duties to the Jeanne Estates Apartments is found to exist in regard to any of the three underlying tort claims.

5. The Court finds that the policy does not cover acts or events which transpired before the policy was issued, and that some of the wrongful acts alleged in the three underlying tort cases occurred prior to the inception of this policy. The "Coie" claim occurred before the July 1998 inception of coverage, as did some aspects of the "Kolbeck" claim. Such events that occurred before July 1998 are not covered.

6. The Court finds that the policy does not cover any person or organization with respect to any current or past partnership, joint venture or limited liability company which is not shown as a named insured on the declarations. The only named insured shown on the declarations is Jeanne Estates Apartments, Inc. No other person or entity is covered regardless of allegations in the three underlying tort cases.

7. The Court finds that the policy does not cover punitive or exemplary damages.

8. The Court finds that the policy does not cover "bodily injury" or "property damage" expected or intended from the standpoint of an insured. The harms involved in all three underlying tort claims were expected or intended harms.

9. The Court finds that the policy contains an "abuse or molestation exclusion" which bars coverage for the abuse or molestation of any person, including any negligence in employment, investigation, supervision, reporting to the proper authorities, and retention. The Court finds that the three underlying tort claims constitute abuse or molestation of persons (or, in the *Coie* claim, abuse of a corpse), such that coverage for all such claims is excluded.

10. The Court finds that the policy excludes coverage for "personal injury" arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured.

11. The Court finds that the policy excludes coverage for "personal injury" arising out of the willful violation of a penal statute or ordinance committed by or with

the consent of the insured.

12.    The Court finds that the Tenant's liability coverage identified on the declaration page, which is the core of the counterclaim by the alleged wives, has no language that bears on the issues of coverage.  The remainder of the counterclaim is moot and is dismissed.

13.    That, therefore, the Court finds that Plaintiffs, Truck Insurance Exchange and Farmers Insurance Exchange, owe no coverage for, have no duty to defend, and have no duty to indemnify any person or entity in regard to *Coie v. Alamo et al.* (Sebastian County Circuit Court, No. CV-2009-1854); *Kolbek v. Twenty First Century et al.* (USDC, Western District of Arkansas No 10-4142) and *Ondrisek and Calagna v. Hoffman et al.* (USDC Western District of Arkansas, 08-4113).  Further, that Farmers Insurance Company and Truck Insurance Exchange do not owe any coverage, duty to defend, or duty to indemnify if any of the three aforesaid lawsuits are dismissed and refiled under new docket numbers.

Appellants now appeal this summary-judgment order.

The law is well settled that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law.  *See Campbell v. Asbury Auto., Inc.*, 2011 Ark. 157, 381 S.W.3d 21.  Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.  *See id.*  On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered.  *See id.*  We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.  *See id.*  Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties.  *See id.*

Where the appeal is from the grant of summary judgment in cases involving an

insurance policy, we liberally construe any ambiguities in the policy in favor of the insured. *See Scottsdale Ins. Co. v. Morrow Land Valley Co., LLC*, 2012 Ark. 247, 411 S.W.3d 184. The court, and not the jury, determines the construction and legal effect of the policy, except when the meaning of the language depends upon disputed extrinsic evidence. *See id.*

As a general rule, when determining a liability carrier's duty to defend, the pleadings against the insured determine the insurer's duty to defend. *See Murphy Oil USA, Inc. v. Unigard Sec. Ins. Co.*, 347 Ark. 167, 61 S.W.3d 807 (2001). The duty to defend is broader than the duty to indemnify; the duty to defend arises when there is a possibility that the injury or damage my fall within the policy coverage. *See id.* Where there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there is no duty to defend. *See id.*

The insured in the instant case was JEA. Before reviewing the allegations against JEA in the underlying complaints, it is important to note that the circuit court found that the inception of coverage of the applicable insurance policy began in July 1998. The judgment received by plaintiff *Coie* was entered on September 14, 1995. Therefore, the allegations against JEA in the *Coie* claim occurred prior to the inception of coverage and it is clear that no genuine issue of material fact exists as to coverage of those claims. For that reason, the circuit court did not err in granting summary judgment in favor of TIE/FIE as to the *Coie* claim.

It is also clear after review that no genuine issue of material fact exists as to TIE/FIE's coverage of the *Ondrisek* claim. JEA was not a named defendant in the *Ondrisek* claim;

7

however, JEA made a demand for the defense of Tony Alamo in that case. The plaintiffs in that case asserted that when they were teenage members of the Alamo religious organization, they suffered several beatings administered by either Tony Alamo or John Kolbek, acting at Alamo's direction. Their complaint asserted causes of action for battery, false imprisonment, outrage, and conspiracy. Plaintiffs specifically asserted that the damage they sustained was in the form of physical pain and suffering, emotional distress, and scarring/disfigurement, and was caused by the defendants "intentionally" and "with malice."

The initial apartment-owners policy issued to JEA, which was renewed each year, defined the insureds, in pertinent part, as follows:

> C. Who Is An Insured
> 1. If you are designated in the Declarations as:
> . . . .
> d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "Executive Officers" and directors are insureds, *but only with respect to their duties as your officers or directors.* Your stockholders are also insureds, *but only with respect to their liability as stockholders.*
>
> 2. Each of the following is also an insured:
> a. Your "employees" other than either your "Executive Officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), *but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.*

(Emphasis added.) Tony Alamo was not acting as an officer or director for JEA, nor with respect to any liability as a stockholder of JEA, nor as an employee performing duties related to the conduct of the business of JEA when he caused harm to the plaintiffs in *Ondrisek*. Therefore, Tony Alamo was not an insured party under JEA's insurance policy. Additionally, the complaint did not contain any specific allegation that any of the actions that

8

caused harm to the plaintiffs were carried out on JEA's property. Finally, all allegations were comprised of intentional tortious acts. JEA's policy specifically excluded coverage for "'body injury' or 'property damage' expected or intended from the standpoint of the insured." Therefore, even were we to assume that Tony Alamo could have been considered an insured under the policy, the policy coverage was not applicable to the actions that Alamo was accused of in the *Ondrisek* complaint. For these reasons, we affirm the circuit court's summary judgment in favor of TIE/FIE on the duty to defend in the *Ondrisek* claim.

We now turn to the final underlying case, the *Kolbek* case, which is the subject of the arguments presented on appeal. The *Kolbek* case began in 2010 when seven young women initiated a lawsuit against a number of persons and entities affiliated with Tony Alamo, including JEA. The women were all minor members of the Alamo organization who were married to Tony Alamo at young ages.[3] The complaint's initial allegations against JEA asserted that JEA (1) was negligent in hiring Tony Alamo; (2) was negligent in supervising and retaining Tony Alamo; (3) was vicariously liable as the employer of Tony Alamo for Alamo's acts "in the course and scope of his employment"; (4) was negligent in allegedly maintaining property that housed the plaintiffs; (5) violated 18 U. S. C. § 1585, which involves the interstate transportation of minors for immoral purposes; (6) was responsible on a theory of premises liability; and (7) was involved with all other Alamo Christian Ministries' entities in a joint venture. The women amended their complaint several times.

---

[3]Nicole Farr is the exception here, as she escaped before she could be married to Alamo.

The final complaint, the fifth amended complaint, added defendants and reaffirmed allegations of negligence against the various entities, including JEA. This alleged negligence included (1) "allowing Tony Alamo unfettered access" to young girls; (2) endorsing or facilitating "spiritual weddings" with underage girls; (3) failure to protect the girls from sexual abuse and beatings; (4) failure to prevent Alamo from taking and distributing nude photos of the girls; (5) failure to prevent "others" from physically abusing the girls at the instruction of Tony Alamo; (6) and failure to keep locations they managed in a reasonably safe condition. The fifth amended complaint also reasserted the negligent hiring, retention, and supervision claims against all the Alamo entities, including JEA, but changed its claims regarding Alamo and stated that "Alamo was not an employee or member of TACM or any Defendant entity." New allegations for false imprisonment, invasion of privacy, and defamation were advanced against all defendants, including JEA. Claims were additionally advanced that JEA and other defendants were liable for trafficking and transporting minors for sexual purposes, and were liable for failure to report child abuse to the appropriate authorities. Finally, all defendants, including JEA, were accused of the tort of outrage.

As previously noted, the circuit court also granted summary judgment in favor of TIE/FIE regarding its duty to defend in the *Kolbek* case. Some of the appellants argue that the circuit court acted prematurely because the insureds' liability had not been established in the underlying lawsuit. However, this court has, on multiple occasions, allowed a carrier to obtain a ruling on the duty to defend and/or indemnify when appropriate. *See, e.g.*, *McSparrin v. Direct Ins.*, 373 Ark. 270, 283 S.W.3d 572 (2008); *Jordan v. Atlantic Cas. Ins. Co.*,

SLIP OPINION

SLIP OPINION

344 Ark. 81, 40 S.W.3d 254 (2001). Nonetheless, this argument was not well developed, nor is it convincing.

Appellants also collectively argue that the circuit court erred in granting summary judgment because it improperly considered evidence outside the pleadings. Generally, insurers are not allowed to refuse to defend on the grounds that they are in possession of information establishing that the allegations in the complaint giving rise to coverage are untrue. *See* Allan D. Windt, *Insurance Claims and Disputes* § 4:4 (6th ed. 2013). The evidence cited by TIE/FIE in support of its summary-judgment motion did not provide facts to disprove the merits of the allegations; rather, they helped illustrate what the allegations lacked in order to assert injury or damages that would fall within policy coverage and how certain facts were not in dispute. Furthermore, even though the letter order of the circuit court did comment on the fact that TIE/FIE presented evidence that no witnesses made a connection between JEA and the three underlying claims and that the appellants had failed to offer countervailing proof, the final order issued by the court cited only to the insurance policy itself in granting the summary judgment. It is clear that the circuit court found that none of the allegations, even assuming each was true, were encompassed by the policy based on the policy language alone.

The majority of the remaining arguments presented by appellants—that the circuit court erred by holding that JEA negated all possibility that any allegation might lead to an award of covered damages, that the evidence did not at least create a material issue of fact on the duty to defend, and that not one claim, including the alleged negligence, was within the

scope of coverage—are found to be without merit as this court concludes that the allegations made in the *Kolbek* case are simply not the type of claims covered by the insurance policy issued to JEA. The insurance policy issued by TIE/FIE to JEA states that the insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury," and medical expenses arising out of the ownership, maintenance or use of the premises shown in the Schedule[4] and operations necessary or incidental to those premises. None of the allegations in the Kolbek complaint were connected to the ownership, maintenance, and use of JEA's premises, nor were they connected to the necessary or incidental operations of JEA.

While this court has not interpreted the "arising out of" language in a liability policy of an apartment complex, we have done so in other types of liability policies. In *Owens v. Ocean Accident & Guarantee Corp. Ltd.*, 194 Ark. 817, 109 S.W.2d 928 (1937), the plaintiff funeral home/ambulance operator had an automobile insurance contract on its ambulance that covered any "damages on account of bodily injuries ... caused by the ownership, maintenance, or use" of the ambulance. *Id.* at 818, 109 S.W.2d at 928. The ambulance officer took a stretcher out of the ambulance, went into a patient's home with it, and negligently allowed the patient to slide off the stretcher before she was loaded into the ambulance, which injured her. *See id.* We held that the injuries were covered because they did arise out of the use of the ambulance and stated as follows:

---

[4]The premises shown are located in Fort Smith, Arkansas.

12

SLIP OPINION

> "Ownership, maintenance, and use" are general terms. These words were selected by the insurer *to indicate or circumscribe the scope of coverage contemplated*; and, where such expressions are adopted, it is not a perversion or extension of the contract, when applied to the instant case, to say that, although use of the stretcher to convey Mrs. Mason from her home to the waiting ambulance was not a necessary incident to use of the automobile as a motor vehicle, it was *an essential transaction in connection with use* of the automobile as an ambulance. When we add to these conclusions appellee's knowledge that the vehicle insured was, by express terms of the contract, to be used as an ambulance, it necessarily follows that *any transaction so closely identified with the operation* of the vehicle as an ambulance as *to form a link in its general utility and functions* would fall within the purview of the risk insured against, and appellee would become liable.

*Owens*, 194 Ark. at 822, 109 S.W.2d at 930 (1937) (emphasis added). However, in *Hartford Fire Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 264 Ark. 743, 574 S.W.2d 265 (1978), we found that an accidental death caused by the discharge of a gun left in an insured recreational vehicle while the gun was being held by a person also inside the parked vehicle was not an injury "arising out of the ownership, maintenance or use" of the insured camper because the accidental death could not be said to be causally related to the use of the camper. Therefore, we have recognized this contractual language in insurance policies to require some sort of causal connection between a transaction or occurrence that is essential to the use of the insured property and the injury. That connection fails to exist in the instant case.

Furthermore, while appellants allege that the circuit court failed to give effect to the term "and operations necessary or incidental to those premises," the injuries alleged also did not arise out of any operations necessary or incidental to JEA's premises. This court has not interpreted the "necessary or incidental" language; however, other jurisdictions have and

13

have required that the same causal connection exist between the injury and the insured's business/operations. *See Newman v. United Fire & Cas. Co.*, NO. CV-13-47-M-DLC, 2014 WL 494529 (D. Mont. Jan. 15, 2014) (the district court found the duty to defend had been triggered because the complaint drew a causal connection between the services provided by the insured and the damages); *Szczeklik v. Markel Int'l Ins. Co., Ltd.*, 942 F. Supp. 2d 1254 (M.D. Fla. 2013) (the district court found that the policy provided coverage because the injury stemmed from the negligence in connection with the assembly and preparation of a product that the insured distributed (i.e., it arose out of the business being conducted by the insured)); *Servants of the Paraclete, Inc. v. Great Am. Ins. Co.*, 857 F. Supp. 822 (D.N.M. 1994) (the district court found a "reasonable causal connection" between the ownership, maintenance or use of the premises and the alleged sexual abuse of minors because the specific mission of the premises insured was the rehabilitation of pedophilic priests). Again, there is no such connection in the instant case.

Even were we to find that a causal connection existed here between the allegations and the business operations of JEA such that the insurance policy provided coverage, there are several exclusions in the policy that also apply to a majority of the allegations in the

instant case.[5678910] While the Kolbek complaint was amended several times to add and alter

---

[5]No person or organization is insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

[6]Regardless of any other provision, this policy does not cover punitive or exemplary damages or the cost of defense related to such damages.

[7]This insurance policy does not apply to:
a.      Expected or Intended Injury
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

[8]This insurance policy does not apply to "bodily injury," "property damage," "advertising injury" or "personal injury" arising out of:
(a) The actual or threatened abuse or molestation of anyone or any person while in the care, custody or control of any insured; or
(b) the negligent
        (i) Employment;
        (ii) Investigation;
        (iii) Supervision;
        (iv) Reporting to the property authorities, or failure to report; or
        (v) Retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

[9]"Personal Injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
e. Oral or written publication of material that violates a person's right of privacy.

[10]This insurance does not apply to:
p. Personal Or Advertising Injury
"Personal Injury" or "advertising injury":
(1) Arising out of oral or written publication of material, if done by or at the direction of the

allegations to posture it in such a way to fall under the TIE/FIE policy, this court has long observed that a pleading will not be judged entirely by what it is labeled but also by what it contains. *See Comcast of Little Rock, Inc. v. Bradshaw*, 2011 Ark. 431, 385 S.W.3d 137. *See also Cornett v. Prather*, 293 Ark. 108, 737 S.W.2d 159 (1987). The injuries and damages in the *Kolbek* case truly all stem from the abuse suffered by the plaintiffs below. No court could help but be sympathetic to those individuals and the injuries they suffered. However, the apartment–liability contract issued by TIE/FIE simply does not exist to provide an insured coverage for this type of alleged harm. Therefore, we affirm the circuit court's grant of summary judgment in favor of TIE/FIE.

Affirmed; motion to dismiss denied.

*Hardin, Jesson & Terry, PLC*, by: *Rex M. Terry* and *Kirkman T. Dougherty*; *Mercy, Carter, Tidwell, LLP*, by: *David Carter* and *John Mercy*; *Dedman Law, PLLC*, by: *Linda Dedman*; and *Ronald W. Metcalf, P.A.*, by: *Ronald W. Metcalf*, for appellants.

*Laser Law Firm, P.A.*, by: *Brian A. Brown*, for appellees.

---

insured with knowledge of its falsity;
. . . .
(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured