89 P.3d 689 (2004)
151 Wash.2d 396
James K. BUTZBERGER, as Personal Representative of the Estate of Jeffrey A. Butzberger, Petitioner,
v.
Frank FOSTER and Michaela Foster, husband and wife, and the marital community consisting thereof; King County, a political subdivision of the State of Washington, Defendants, and
Allstate Insurance Company, Petitioner, and
T.H.E. Insurance Company, Respondent.
No. 72807-1.
Supreme Court of Washington, En Banc.
Argued May 6, 2003.
Decided May 6, 2004.
As Amended on Denial of Reconsideration July 20, 2004.
*691 Edwin Snook, Kirkland, WA, for Petitioner Butzberger.
Gordon Thomas Honeywell, Bradley Maxa, Tacoma, WA, Steven J. Thomas, Enumclaw, WA, Elena L. Garella, Seattle, WA, for Petitioner Allstate Insurance Company.
Gardner Bond Trabolsi, St. Lois & Clement, PLLC., William Clement, Susan K. Atwal, Seattle, WA, for Respondent.
*690 SANDERS, J.
While attempting to rescue Frank Foster, trapped inside his overturned pickup truck on Interstate 5, Jeffrey Butzberger was struck and killed by an underinsured motorist. Butzberger's estate brought suit seeking to recover underinsured motorist (UIM) coverage from the insurer of Foster's vehicle and the insurer of the vehicle Butzberger had been driving. The trial court granted summary judgment on several claims, ruling Butzberger was entitled to UIM benefits under the policy covering his vehicle but not under the policy covering Foster's vehicle. The Court of Appeals reversed, holding Butzberger was entitled to UIM benefits under the policy covering Foster's vehicle but not under the policy covering Butzberger's vehicle. We hold Butzberger is entitled to UIM benefits under both policies. Accordingly we affirm in part and reverse in part.

FACTS
On an early morning in November 1995 Frank Foster was driving his pickup truck north on Interstate 5 when he lost control of the vehicle. His truck spun across the highway, struck a barrier, overturned, and came to rest on its side within the lanes of oncoming traffic. Foster remained inside the truck, hanging by his seat belt. Allstate Insurance Company insured Foster's truck.
Butzberger was also driving north on Interstate 5 that morning on his way to work. He was driving a vehicle owned by Cascade Distributing that T.H.E. Insurance Company insured. When Butzberger saw the overturned pickup he parked his car on the shoulder of the highway, behind another vehicle that had also pulled over, approximately 75 feet from Foster's pickup. Butzberger ran to Foster's truck where he spoke with Foster for approximately 30 to 45 seconds.[1] While *692 they were talking, Lawrence Phillips, also driving northbound, slammed into the undercarriage of Foster's pickup. Butzberger was thrown by the force of the crash and died at the scene.
Butzberger's estate sued Foster, Allstate, and T.H.E., claiming Butzberger was entitled to UIM coverage.[2] The Allstate policy insuring Foster's truck provides UIM coverage to "[a]ny person while in, on, getting into or out of an insured motor vehicle." Suppl. Clerk's Papers (SCP) at 502. The policy also provides general liability coverage to "any other person using [the insured auto] with [the named insured's] permission." SCP at 489 (emphasis added). The T.H.E. insurance policy insuring Butzberger's vehicle provides UIM coverage for anyone who is "occupying" the insured vehicle. SCP at 385. "Occupying" is defined as "in, upon, getting in, on, out or off." SCP at 387. In addition to UIM coverage the T.H.E. policy provides general liability coverage for anyone "using" the insured auto with the named insured's permission. SCP at 367. Neither policy defines the term "using."
The trial court ruled on summary judgment that the T.H.E. policy provided UIM coverage for Butzberger and the Allstate policy did not. As a result, the trial court awarded attorney fees against T.H.E. in favor of the estate.
T.H.E. appealed and the estate cross-appealed. The Court of Appeals, Division One, reversed the trial court and ruled Butzberger was "using" Foster's pickup truck and not the vehicle Butzberger had been driving. Butzberger v. Foster, 112 Wash.App. 81, 84, 47 P.3d 177 (2002). Therefore, the court held Butzberger was entitled to UIM benefits from Allstate but not from T.H.E. Id. The court also awarded the estate attorney fees against Allstate. Id.
Allstate and the estate filed separate petitions for review, which this court granted. The estate seeks UIM coverage for Butzberger from both Allstate and T.H.E., while Allstate seeks a reversal of the Court of Appeals ruling that Butzberger was entitled to UIM coverage from Allstate.

STANDARD OF REVIEW
When reviewing an order of summary judgment we engage in the same inquiry as the trial court. See CR 56(c). Our review is de novo. Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is appropriate only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993). The interpretation of insurance policy language is a question of law, also reviewed de novo. See Roller v. Stonewall Ins. Co., 115 Wash.2d 679, 682, 801 P.2d 207 (1990). The policy language is to be given the same "`fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" Overton v. Consol. Ins. Co., 145 Wash.2d 417, 424, 38 P.3d 322 (2002) (quoting Sears v. Grange Ins. Ass'n, 111 Wash.2d 636, 638, 762 P.2d 1141 (1988)).

ANALYSIS

I.
UIM coverage is mandated by statute as one of "many regulatory measures designed to protect the public from the ravages of the negligent and reckless driver." Touchette v. N.W. Mut. Ins. Co., 80 Wash.2d 327, 332, 494 P.2d 479 (1972); see RCW 48.22.030. Even if the UIM endorsement of a *693 particular policy does not contain the words "use" or "using," those words are deemed contained in the endorsement "by force of [the UIM] statute and judicial construction." Rau v. Liberty Mut. Ins. Co., 21 Wash.App. 326, 331, 585 P.2d 157 (1978). The statutory policy of Washington's UIM statute "`vitiates any attempt to make the meaning of insured for purposes of uninsured motorist coverage narrower than the meaning of that term under the primary liability section of the policy.'" Id. at 328-29, 585 P.2d 157 (quoting RCW 48.22.030). Therefore, Butzberger, who is not a named insured on either policy at issue, is entitled to UIM coverage if he was using Foster's truck at the time of his death and/or if he was using the vehicle he had been driving.
Whether one was using a vehicle is so common an inquiry in the insurance industry that the Court of Appeals in Rau established a four-factor test:
(1) there must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.
Id. at 334, 585 P.2d 157 (citations omitted); see also Roller, 115 Wash.2d at 687, 801 P.2d 207; Sears, 111 Wash.2d at 639, 762 P.2d 1141.
In Rau a truck driver crossed four lanes of traffic on foot to ask for directions and as he was returning to his vehicle he was hit by an uninsured motorist. Rau, 21 Wash.App. at 327, 585 P.2d 157. The accident occurred approximately 20 feet from his truck. Id. The court held he satisfied the four-factor test for use of his vehicle. Id. at 334, 585 P.2d 157. It reasoned, "Common sense tells us ... that the parties contemplated the driver of a delivery truck on his route might well be expected to have to occasionally leave the truck briefly to ask directions." Id. at 334, 585 P.2d 157.
This court adopted the Rau test in Sears. Sears, 111 Wash.2d at 639, 762 P.2d 1141. There we held a guest passenger injured in an automobile accident was using the vehicle she was riding in for purposes of UIM coverage. Id. We stated that "`use' will not be interpreted to have a unique meaning. Rather, the general criteria for determining whether a person is using a vehicle and thus insured under a UIM endorsement will be followed." Id. at 638, 762 P.2d 1141. We then applied the four factors of Rau but did so without analysis concluding, "[i]n the factual context of this case, we find all four criteria are met." Id. at 639, 762 P.2d 1141.
Then in 1990 this court decided that a passenger was not using his vehicle after he exited, left the scene to call police, and returned to write down a license plate number.[3]Roller, 115 Wash.2d at 689, 801 P.2d 207. Once again we relied on the Rau test, but as the Court of Appeals in Cherry v. Truck Insurance Exchange, 77 Wash.App. 557, 566, 892 P.2d 768 (1995) recognized, we "did not explain causal connection, proximity, vehicle orientation, or [our] reasoning in applying [those] factors." Thus although this court adopted the Rau test in Sears and followed that test in Roller, we have never critically examined the underlying meaning and purpose of each of the four factors. We take the opportunity to do so here.
Causal Relation or Connection.
For the first factor, causal relation or connection, Rau looked to Federated Mutual Implement & Hardware Insurance Co. v. Gupton, 241 F.Supp. 509 (E.D.S.C.1965), aff'd, 357 F.2d 155 (4th Cir.1966). Rau, 21 Wash.App. at 333, 585 P.2d 157. There a gasoline station employee used his employer's pickup truck to deliver a can of gasoline to a stalled vehicle. Gupton, 241 F.Supp. at *694 510. The employee parked the truck behind the stalled vehicle, removed the gasoline can, and began pouring the fuel into the vehicle's tank. Id. at 510. While the employee filled the gas tank the driver of the stalled vehicle started her car and unexpectedly backed into the employee, pinning him between the two vehicles. Id. at 511. The court held the employee was using the truck for purposes of UIM coverage concluding, "[i]t is all too obvious that it was within the contemplation of the parties that the truck would be used as a service station truck and that operation of delivering gasoline on the highways was a necessary and incidental adjunct." Id. at 512. The court reasoned, "[w]hether or not an injury arose from the `use' of a motor vehicle within the contemplation of a liability policy or statute depends upon the factual context of each case. In this setting the term does not imply `remoteness,' but does extend beyond actual physical contact." Id. at 511.
The cases Gupton relies on are helpful to discern the meaning and purpose of Rau's causal relation or connection factor. Gupton quoted with favor Carter v. Bergeron, 102 N.H. 464, 160 A.2d 348 (1960), in which the court stated there was no requirement "`that the injury (be) ... directly and proximately caused by the use of the [insured] vehicle,' but only that it arose out of the use.'" Gupton, 241 F.Supp. at 512 (quoting Carter, 160 A.2d at 353). Similarly the court quoted Schmidt v. Utilities Insurance Co., 353 Mo. 213, 182 S.W.2d 181 (1944) where the court stated, "`the negligent act and resulting injury [must be] a natural and reasonable incident or consequence of the use of the [insured vehicle] though not foreseen or expected; and ... the negligent acts and resulting injury [must be] reasonably incident to, and closely connected with, the use of the [insured vehicle]." Id. at 184, quoted in Gupton, 241 F.Supp. at 512.
It is clear from Gupton and the cases cited favorably therein that for an injury to be covered under a UIM endorsement there must be a sufficient causal relationship or connection between the injury and the use of the insured vehicle. Gupton, 241 F.Supp. at 511. Indeed it would defy common sense for an insured vehicle's UIM coverage to extend to an injury wholly unrelated to the use of the vehicle. Nonetheless the requisite causal relation or connection does not require the use of the insured vehicle be a proximate cause of the injury. Id. at 511-13; see also Transamerica Ins. Group v. United Pac. Ins. Co., 92 Wash.2d 21, 26, 593 P.2d 156 (1979) (concluding it is not necessary that the use be a proximate cause of the injury for there to be a causal connection), overruled on other grounds by State v. Olson, 126 Wash.2d 315, 893 P.2d 629 (1995); Beckman v. Connolly, 79 Wash.App. 265, 274, 898 P.2d 357 (1995) (recognizing that "the `use' need not be a `proximate' cause of the occurrence or injury" to satisfy the causal connection requirement). In fact the insured vehicle cannot be the proximate cause of the injury as the UIM statute mandates the injury be caused by the uninsured vehicle before UIM coverage applies. RCW 48.22.030; see also Cherry, 77 Wash.App. at 563 n. 3, 892 P.2d 768. As such the causal relation or connection factor requires only that the use of the insured vehicle be a "but for" cause of the injury. See Beckman, 79 Wash.App. at 274, 898 P.2d 357.
Geographic Proximity.
Rau derived the second factor, reasonably close geographic proximity, from Hartford Accident Indemnity Co. v. Booker, 140 Ga. App. 3, 230 S.E.2d 70 (1976). Rau, 21 Wash. App. at 332-33, 585 P.2d 157. There the court held a garbage truck driver was using the garbage truck when he was struck by an uninsured motorist while collecting garbage some 30 feet from the truck. Booker, 230 S.E.2d at 71. The court reasoned that to define use of an insured vehicle, courts "must look to the contemplation of the parties in entering into the insurance contract." Id. at 73. Booker noted geographic proximity as a factor in determining use but declared, "we are hesitant to delineate an arbitrary distance from a vehicle beyond which a person can no longer be `using' it." Id. at 72-73. The court ultimately concluded:
Common sense tells us that the parties certainly contemplated that the garbage truck would be loaded and unloaded and *695 that the garbage to be loaded on said truck would be hauled to the truck by a garbage collection container and that, in many instances, it would be necessary for the driver to walk down the side of the road near his truck in order to collect the garbage.
Id. at 73.
As Gupton, Booker, and Rau make clear, a person does not have to be in physical contact with an insured vehicle to be using the vehicle for purposes of UIM coverage. Rau, 21 Wash.App. at 334-35, 585 P.2d 157; Booker, 230 S.E.2d at 73; Gupton, 241 F.Supp. at 511-12. Nevertheless there must be a rational limit to the distance beyond which an injury may occur to be covered under a vehicle's UIM policy. As such, requiring the injured person be within "reasonably close geographic proximity," Rau, 21 Wash.App. at 334, 585 P.2d 157, to the insured vehicle at the time of his or her injury provides an important physical limitation on the scope of UIM coverage by ensuring coverage extends only to injuries which occur close to the insured vehicle.
Transaction Essential to Use.
For the fourth factor, a transaction essential to the use of the vehicle, Rau relied on Owens v. Ocean Accident & Guarantee Corp., 194 Ark. 817, 109 S.W.2d 928 (1937). Rau, 21 Wash.App. at 333, 585 P.2d 157. There the court found an ambulance's insurance policy covered a person who fell off a stretcher as she was being carried from her home to the waiting ambulance. Owens, 109 S.W.2d at 930. The court concluded, "although use of the stretcher to convey [the patient] from her home to the waiting ambulance was not a necessary incident to use of the automobile as a motor vehicle, it was an essential transaction in connection with use of the automobile as an ambulance." Id.
The essential transaction factor, like the geographic proximity factor, provides an important limitation on the scope of UIM coverage. Limiting UIM coverage to situations where the injury occurred while the injured party was engaged in a transaction essential to the use of the insured vehicle ensures that the injury and the use are not only causally connected but connected in a manner such that common sense dictates the insured vehicle's UIM policy should cover the injury at issue. The essential transaction factor builds on the causal connection and geographic proximity factors by requiring something beyond mere coincidence between the but for cause of the injury and the location of the injured person at the time of the injury.
Vehicle Oriented.
Lastly Rau derived the third factor, vehicle oriented rather than highway or sidewalk oriented, from Insurance Co. of North America v. Perry, 204 Va. 833, 134 S.E.2d 418 (1964). Rau, 21 Wash.App. at 334, 585 P.2d 157. In Perry a police officer drove his cruiser to a specific location to serve a warrant. Perry, 134 S.E.2d at 419. After parking the cruiser and placing its keys in his pocket, the officer walked along the roadway approximately 164 feet from the police cruiser. Id. He was then struck and killed by an uninsured motorist. Id. The court held the officer was not using the police cruiser at the time of his death because he was 164 feet away from it and engaged in the act of serving a warrant. Id. at 421.
Rau concluded, "[t]he gist of that opinion is that at the time the officer was struck he was no longer vehicle oriented but had become highway or sidewalk oriented." Rau, 21 Wash.App. at 334, 585 P.2d 157. The court in Perry, however, did not discuss the vehicle, highway, or sidewalk orientation of the officer. Indeed as recognized in Cherry, "the Virginia Supreme Court has authoritatively stated that Perry turns on the proximity and essential transaction factors, without reference to a `vehicle oriented' factor." Cherry, 77 Wash.App. at 564, 892 P.2d 768 (citing Great Am. Ins. Co. v. Cassell, 239 Va. 421, 389 S.E.2d 476, 477 (1990)). As such Perry provides no guidance as to the purpose or benefit of determining whether the injured person was vehicle oriented at the time of his or her injury.
Although Rau created the vehicle oriented factor, the opinion itself does not explain how a vehicle oriented factor helps illuminate the reasonable expectations of the insured or *696 suggest a method for its application.[4] Subsequent cases, including the two cases from this court that relied on the Rau test, have also failed to explain or demonstrate the need for a vehicle oriented factor. Sears did not discuss or independently apply the vehicle oriented factor. See Sears, 111 Wash.2d at 639, 762 P.2d 1141. Similarly Roller did not endeavor to examine the vehicle oriented factor but instead concluded, "[t]his factor is not met by Roller because he was no longer vehicle oriented at the time McKay ran into him on the street." Roller, 115 Wash.2d at 688, 801 P.2d 207.
Furthermore the causal connection, geographic proximity, and essential transaction factors are designed to foster a "`common sense' analysis of the circumstances, broadly looking to the reasonable expectations of the insured, and to the means and purposes of the particular use in question." See Cherry, 77 Wash.App. at 565, 892 P.2d 768. Yet the vehicle oriented factor focuses narrowly on the precise physical position of the insured toward or away from the insured vehicle. Id. To that extent the vehicle oriented factor is contrary to the underlying purpose of the other three factors and is unhelpful in illuminating the reasonable expectations of the insured. See id.
Rau provides no explanation of the basis for a vehicle oriented factor, no discussion of how it helps illuminate the reasonable expectations of the insured, and no suggestion of how it should be applied. This court's application of the vehicle oriented factor in Sears and Roller demonstrates it adds nothing to the analysis of use for purposes of UIM coverage. Additionally a narrow focus on the injured person's physical orientation toward or away from the insured vehicle is contrary to the broad commonsense assessment of the reasonable expectations of the insured that the causal connection, geographic proximity, and essential transaction factors are designed to foster. Consequently we find it appropriate to abandon the vehicle oriented factor entirely. To the extent Sears and Roller implicitly require all of the Rau factors be met in each case, they are overruled.

II.
Allstate argues the Rau factors are appropriate only for determining when use of a vehicle ends and not when use begins. Allstate urges this court to follow a Pennsylvania decision which distinguished between beginning and ending use. Downing v. Harleysville Ins. Co., 412 Pa.Super. 15, 602 A.2d 871, 873-74 (1992). The Pennsylvania court made this distinction to interpret whether an individual was "occupying" a vehicle, not whether he or she was using the vehicle as is the question before us. Id. at 873-74. There is no Washington case making a distinction between when use begins and when it ends. We see no reason to do so here as distinguishing beginning and ending use merely complicates the inquiry.
Allstate asserts that "[n]o Washington court has applied the Rau analysis in a case where the claimant is a stranger to the insured vehicle."[5] Suppl. Br. of Pet'r Allstate at 6. This is true; however, in Owens the injured person had never been in the ambulance, yet the court found the ambulance's insurance covered her injury. Owens, 109 S.W.2d at 930.
Additionally prior to Sears we held that shooting at your own vehicle with a revolver *697 can constitute use of that vehicle. Detweiler v. J.C. Penney Cas. Ins. Co., 110 Wash.2d 99, 109, 751 P.2d 282 (1988). In Detweiler a man with whom Stephen Detweiler had been drinking beer and whiskey drove off in Detweiler's pickup truck. Id. at 101, 751 P.2d 282. As the truck drove past Detweiler, he pulled out a revolver and fired several shots at the truck to stop it. Id. at 101, 751 P.2d 282. One of the bullets ricocheted off his truck and struck Detweiler in the head causing him facial and eye injuries. Id. We held the driver of Detweiler's truck was an uninsured motorist, and Detweiler was using his vehicle for purposes of uninsured motorist coverage. Id. at 102, 109. Detweiler did not discuss the Rau factors in its analysis of use, nor did the Sears court discuss Detweiler. Nonetheless, Detweiler demonstrates Washington's expansive reading of use, and as such we do not find Allstate's argument persuasive that use should somehow exclude "strangers."
Therefore whether a person was using a vehicle for purposes of UIM coverage depends on the facts of each case, but the following three factors must be met at the time of the injury: (1) there must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; and (3) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

III.
Butzberger's estate seeks UIM coverage from Allstate, the insurer of Foster's truck. The question here is whether a named insured (i.e., Foster) would reasonably expect coverage for the death of a person attempting to rescue the named insured from his or her overturned vehicle under the UIM endorsement of that vehicle. See Cherry, 77 Wash.App. at 565, 892 P.2d 768. To answer this question we apply the three-factor test articulated above. The first two factors are easily satisfied.
The first factor is a causal relation or connection between the injury and the use of the insured vehicle. Here the connection is established because Butzberger was attempting to rescue Foster from the insured vehicle at the time the vehicle was hit by the underinsured motorist. But for Butzberger's attempt to rescue Foster from the insured vehicle, Butzberger would not have been killed. The second factor is that the injured person must have been in reasonably close geographic proximity to, although not necessarily touching, the insured vehicle. Butzberger was either touching Foster's truck or was within a few feet from it when he was struck and killed, thus establishing geographic proximity.
To determine whether Butzberger was engaged in a transaction essential to the use of Foster's truck, the third factor, the Court of Appeals stated, "[u]nquestionably he was." Butzberger, 112 Wash.App. at 91, 47 P.3d 177. We agree. Rescuing a stranded driver who is injured or in peril is essential to the continued use of the vehicle, as the vehicle cannot continue to its destination until the rescue has been accomplished. We hold a rescue effort to assist an occupant of another vehicle is a transaction essential to the use of that vehicle.
Therefore, application of the three factors here leads to the conclusion that a named insured would reasonably expect a rescuer killed while trying to rescue the named insured from an overturned vehicle to be covered under the vehicle's UIM policy. Consequently, Butzberger is entitled to UIM coverage from Allstate.

IV.
To determine whether Butzberger is covered under the T.H.E. policy, we ask whether a named insured (i.e., Cascade Distributing) reasonably would expect UIM coverage for the death of a driver of the insured vehicle who was killed while engaging in a rescue attempt of a stranded motorist. See Cherry, 77 Wash.App. at 565, 892 P.2d 768. To answer this question we again apply the three factors. Contracting parties would anticipate a driver might have occasion to engage in an emergency rescue of another driver on the highway.
There is every indication Butzberger intended to proceed in his vehicle after his rescue effort was complete. The rescue effort was merely part of the process of Butzberger's ongoing travel. This demonstrates *698 Butzberger was engaged in a transaction essential to the use of his own vehicle when he was killed.[6] It is true, as Judge Cardozo recognized so many years ago, "Danger invites rescue. The cry of distress is the summons to relief." Wagner v. Int'l Ry. Co., 232 N.Y. 176, 180, 133 N.E. 437, 437 (1921). The law has long recognized that seeing a person injured or in peril compels those called to follow the example of the Good Samaritan to provide assistance. See Gardner v. Loomis Armored Inc., 128 Wash.2d 931, 940, 913 P.2d 377 (1996) (recognizing "public policy of encouraging citizens to save others from life threatening situations."); State v. Hillman, 66 Wash.App. 770, 776, 832 P.2d 1369 (1992) (noting "[i]t has long been the policy of our law to protect the `Good Samaritan.'"). When driving, a Good Samaritan is unable to ignore the sight of a perilously stranded motorist. Hence, we recognize when a motorist interrupts his or her travel to rescue a victim in another vehicle, the rescue is a transaction essential to the use of the rescuer's vehicle, the third factor. From there the remaining two factors fall neatly into place.
There is a causal connection between Butzberger's death and the vehicle he had been driving. At the time of his death Butzberger had not yet arrived at his destination. He would have been able to continue on his way to work and would not have been killed but for his attempt to rescue Foster. The interruption in Butzberger's use of his vehicle as a means of transportation to work establishes a sufficient causal connection between his death and the vehicle he had been driving. Proximity is also established. Rau considered 20 feet to be reasonably close where the driver crossed four lanes of traffic to ask for directions. Rau, 21 Wash.App. at 334-35, 585 P.2d 157. The approximately 75 feet Butzberger was from his vehicle is also reasonably close when one considers that another vehicle was parked immediately behind Foster's overturned truck and Butzberger parked directly behind it.
Therefore application of the three factors demonstrates Butzberger's actions were within the reasonably expected use of the vehicle he had been driving as contemplated by the insured when contracting for coverage of persons using the insured vehicle. Accordingly Butzberger is entitled to UIM coverage from T.H.E.
The estate argues the trial court erred by ruling on summary judgment that T.H.E. established a valid UIM waiver, thus limiting the amount of its UIM coverage to $50,000. The Court of Appeals did not decide this issue in light of its holding that Butzberger was not using the vehicle he had been driving. Because this issue was not decided, we remand the case to the Court of Appeals to determine whether T.H.E. established a valid UIM waiver. See RAP 13.7(b).[7]

V.
The estate requests reasonable attorney fees under RAP 18.1. In Olympic *699 Steamship Co. v. Centennial Insurance Co., 117 Wash.2d 37, 52, 811 P.2d 673 (1991), this court extended "the right of an insured to recoup attorney fees that it incurs because an insurer refuses to defend or pay the justified action or claim of the insured, regardless of whether a lawsuit is filed against the insured." Olympic Steamship stands for the proposition that "[w]hen insureds are forced to file suit to obtain the benefit of their insurance contract, they are entitled to attorneys' fees." Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654, 687 n. 15, 15 P.3d 115 (2000) (citing Olympic S.S. Co., 117 Wash.2d at 52-53, 811 P.2d 673). Therefore, the estate is awarded attorney fees against T.H.E. and Allstate for work at trial and on appeal. The trial court shall determine the reasonable amount of such fees after the Court of Appeals resolves the UIM waiver issue.

CONCLUSION
We hold Butzberger was using both Foster's vehicle and the vehicle Butzberger had been driving when he was struck and killed by an underinsured motorist. Accordingly, Butzberger's estate is entitled to UIM benefits and attorney fees from both Allstate and T.H.E. We affirm the Court of Appeal in part and reverse in part and remand to the Court of Appeals for further proceedings consistent with this opinion. See RAP 13.7(b).
JOHNSON, IRELAND, and CHAMBERS, JJ., concur.
BRIDGE, J. (concurring in part/dissenting in part).
I agree with the majority's decision to abandon use of the vehicle orientation factor adopted by the Court of Appeals in Rau v. Liberty Mutual Insurance Co., 21 Wash.App. 326, 331, 585 P.2d 157 (1978). I write separately, however, because although I agree with the majority's conclusion that Jeffrey Butzberger's attempt to rescue Frank Foster constituted "use" of Foster's truck for purposes of underinsured motorist (UIM) coverage under Allstate's policy, I respectfully disagree with the majority's conclusion that Butzberger's arrival at the scene in Cascade Distributing's vehicle constituted "use" for purposes of UIM coverage under T.H.E.'s policy.

Claim Against T.H.E.
Butzberger arrived at the scene of Foster's accident in a vehicle owned by Cascade Distributing and insured by T.H.E. T.H.E.'s policy includes UIM motorist coverage for "anyone... `occupying' a covered `auto' or a temporary substitute for a covered `auto.'" Suppl. Clerk's Papers (SCP) at 385. "`Occupying' " is defined by the T.H.E. policy as, "in, upon, getting in, on, out or off." Id. at 387, 585 P.2d 157. The T.H.E. policy also provides general liability coverage for insureds, which are defined as: "Anyone else while using with your permission a covered `auto' you own, hire or borrow." SCP at 367 (emphasis added). We have held that once a person is determined to be an "insured" under the insurance policy, that person cannot be excluded from UIM coverage. Federated Am. Ins. Co. v. Raynes, 88 Wash.2d 439, 444, 563 P.2d 815 (1977).
When determining whether Butzberger was "using" the T.H.E. insured vehicle, this court's focus is to be on the reasonable expectations of the insured. To do so, I would apply the three remaining factors in the Rau test:
(1) there must be a causal relation or connection between the injury and the use of the insured vehicle; (2) the person asserting coverage must be in reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; ... (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.
Rau, 21 Wash.App. at 334, 585 P.2d 157 (citations omitted). As noted above, the Rau factors are conjunctive, "so failure to satisfy any one of them precludes coverage." Cherry v. Truck Ins. Exch., 77 Wash.App. 557, 561, 892 P.2d 768 (1995). Contrary to the majority's conclusion, the facts in this case fail to satisfy these three Rau factors.
First, the majority holds that the causal connection factor of the Rau test has been met because "[a]t the time of his death Butzberger had not yet arrived at his destination. He would have been able to continue on his way to work and would not have been killed *700 but for his attempt to rescue Foster." Majority at 698. Although this statement highlights the causal connection between Butzberger's death and Foster's vehicle, it fails to establish a causal connection between Butzberger's death and Cascade Distributing's vehicle. Butzberger merely used Cascade Distributing's vehicle to drive to work on that fateful day, and parked the vehicle approximately 75 feet away from Foster's truck where the accident resulting in his death occurred. His attempted rescue of Foster and resulting injury was not "`a natural and reasonable incident or consequence of the use of [Cascade Distributing's vehicle]'" as a means of transportation to and from work. Federated Mut. Implement & Hardware Ins. Co. v. Gupton, 241 F.Supp. 509, 512 (1965) (quoting Schmidt v. Utils. Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 184 (1944), aff'd, 357 F.2d 155 (4th Cir.1966)). See also Cherry, 77 Wash.App. at 563 n. 3, 892 P.2d 768 (the causal connection between the injured person and the insured vehicle "may be shown, for instance, by demonstrating that the injured person plausibly was acting within the scope of the permission to use the vehicle given by the named insured"). Therefore, Butzberger's claim to UIM coverage under T.H.E.'s policy should be denied for failing to establish this first Rau factor.
It is also questionable whether Butzberger was close enough to Cascade Distributing's vehicle to satisfy the geographic proximity factor. Although courts have declined to impose a maximum distance to determine whether this factor has been met, the injured party must still be within a reasonable distance to the vehicle at issue. See Hartford Accident & Indem. Co. v. Booker, 140 Ga. App. 3, 6, 230 S.E.2d 70 (1976). In Rau, the Court of Appeals found that 20 feet satisfied the geographic proximity factor. 21 Wash. App. at 334-35, 585 P.2d 157. Similarly, in Cherry, the Court of Appeals, found that the claimant was "reasonably close" to the insured vehicle when he had parked immediately in front of the underinsured vehicle that caused his injuries. 77 Wash.App. at 559, 566, 892 P.2d 768. Here, however, Butzberger was injured approximately 75 feet away from Cascade Distributing's vehicle. Moreover, Butzberger was not parked immediately in back or in front of Foster's truck. Given this distance, it is difficult to conclude that the parties would reasonably expect Butzberger to be entitled to UIM coverage under T.H.E.'s policy. Id. at 566, 892 P.2d 768.
Further, the majority mistakenly holds that Butzberger was engaged in activity essential to his use of Cascade Distributing's vehicle. Majority at 697-98. Stating the general proposition that "[t]he law has long recognized that seeing a person injured or in peril compels those called to follow the example of the Good Samaritan to provide assistance," the majority leaps to the astonishing conclusion that rescuing a victim in another vehicle is essential to the use of the rescuer's vehicle. Id. at 698. This reasoning fails to comport with the reasonable expectations of the insured and ignores persuasive authority requiring that a driver engage in activities which directly pertain to the particularized use of the insured vehicle in order to satisfy the essential use factor. See Roller v. Stonewall Ins. Co., 115 Wash.2d 679, 689, 801 P.2d 207 (1990); Cherry, 77 Wash.App. at 567, 892 P.2d 768; Rau, 21 Wash.App. at 334-35, 585 P.2d 157; United States Fire Ins. Co. v. Parker, 250 Va. 374, 378, 463 S.E.2d 464 (1995).
In Rau, the Court of Appeals considered whether a delivery driver could reasonably expect coverage under his employer's UIM policy for injuries that he sustained while returning to his delivery truck after inquiring about directions. 21 Wash.App. at 334-35, 585 P.2d 157. After creating the four factored Rau test to help courts determine whether a person was "using" the vehicle at issue, the court applied its test and concluded that the injured driver was entitled to coverage under his employer's UIM policy. Id. at 334, 585 P.2d 157. The court relied on the rationale that delivery drivers are normally expected to inquire about directions as part of making deliveries in their employer's truck. Id. ("Common sense tells us, as it did the court which considered a similar event in Booker, that the parties contemplated the driver of a delivery truck on his route might well be expected to have to occasionally leave the truck briefly to ask directions."). Indeed, *701 asking directions to make scheduled deliveries directly pertains to delivery drivers' particularized use of the vehicle as a delivery truck.
Division Two of the Court of Appeals relied on this same rationale in Cherry when it held that a tow truck driver could reasonably expect UIM coverage under his employer's insurance policy when he sustained injuries while providing emergency services to a stranded driver. 77 Wash.App. at 566, 892 P.2d 768. The court reasoned:
Cherry was engaged in a transaction essential to using the emergency service tow truck (i.e., helping a stranded motorist) which, under a common sense understanding, includes both activities such as checking the stranded motorist's belts, and also the use of the lights on the emergency service truck to see at night and to ensure Cherry's safety while helping the stranded motorist.... In sum, a reasonable person purchasing insurance would expect an injury sustained while helping a stranded motorist to be covered by a UIM policy covering employees using the emergency service tow truck.
Id. Like the delivery driver in Rau, the tow truck driver's act of rendering aid to a stranded motorist at the behest of his employer certainly qualifies as an act that directly pertains to his particularized use of his employer's tow truck. 21 Wash.App. at 334, 585 P.2d 157.
We have also required that the injured party engage in an act that directly pertained to the use of the insured vehicle in Roller. 115 Wash.2d at 688-89, 801 P.2d 207. In Roller, a passenger of the insured vehicle was intentionally injured by an underinsured driver while writing down the underinsured driver's license plate number for the purpose of making a police report. Id. at 681, 801 P.2d 207. Citing to Rau, we reasoned that the injured party failed to meet the essential use factor given that his act of writing down the license plate number did not directly pertain to the use of the insured vehicle. Id. at 689, 801 P.2d 207.
Other state courts as well demand that the injured person engage in activities which directly pertain to the particularized use of the insured vehicle. In United States Fire Insurance Co., the Virginia Supreme Court considered whether Parker, a landscape gardener, engaged in activities essential to the use of her employer's vehicle for purposes of UIM coverage. 250 Va. at 375-76, 463 S.E.2d 464. Parker was gardening at the time of her injury by an underinsured motorist. Id. at 375, 463 S.E.2d 464. The company truck was parked 12 to 15 feet away to provide a "safety barrier" to protect her and her fellow employees from speeding motorists. Id. at 376, 463 S.E.2d 464. She contended that she was "using" the truck for purposes of UIM coverage. Id. at 377, 463 S.E.2d 464. However, the court held that Parker failed to establish that she was engaged in an activity essential to the use of the truck because "she was not utilizing the truck as a vehicle at that time. She was 12 to 15 feet away from the truck with her foot on a shovel in the act of digging a hole when struck." Id. at 378, 463 S.E.2d 464.
Notably, the Virginia Supreme Court distinguished Parker's case from Great American Insurance Co. v. Cassell, 239 Va. 421, 424, 389 S.E.2d 476, 477 (1990), where it held that a fire fighter was "using" the insured fire truck when he was injured by an underinsured motorist while completing a required report 20 to 25 feet away from the fire truck. United States Fire Ins. Co., 250 Va. at 377-78, 463 S.E.2d 464. In its comparison of the cases, the court noted:
In Cassell, the fire truck's lights were burning, a hose connected to the truck used water carried on the truck to extinguish the fire, and emergency vehicles suitable for use to control traffic were utilized as barriers at the scene. Here, the truck merely was used as a means of transportation so that Parker could complete her landscaping duties.
Id. at 378, 463 S.E.2d 464. Thus, Parker was not engaging in any activity at the time of her injury that directly pertained to her particularized use of her employer's truck as a *702 means of transportation to and from the jobsite.[1]
Here, like Parker, Butzberger was not engaged in any activity at the time of his death that directly pertained to the use of Cascade Distributing's vehicle as a means of transportation to his place of employment. Granted, we can assume that Butzberger intended to return to his vehicle after assisting Foster, but his attempted rescue of Foster in no way furthered or even tangentially related to his use of the insured vehicle. Unlike the fire truck in Cassell and the tow truck in Cherry, which were integral to the claimants' presence and activities at the scene where their injuries occurred, Cascade Distributing's vehicle merely served as the means of transportation.
In sum, this court should follow persuasive authority which has established that injured persons must engage in activity directly pertaining to the particularized use of the insured vehicle in order to satisfy the essential use factor. This limitation ensures that courts abide by the "reasonable expectations of the insured." Cherry, 77 Wash.App. at 565, 892 P.2d 768. Indeed, how could Cascade Distributing anticipate that Butzberger might happen upon a distressed motorist during his drive to work and, while under no direction by Cascade Distributing or duty under the law, undertake a rescue and suffer fatal injuries from an underinsured motorist? Such a scenario may be reasonably anticipated by tow truck and emergency rescue services when purchasing policies for vehicles operated by their employees but not by the parties in the ordinary course of commuting to work.
Given that the facts presented do not satisfy the causal connection, geographic proximity, and essential use factors of the revised Rau test, this court should deny Butzberger UIM coverage under T.H.E.'s policy. Accordingly, I would affirm the Court of Appeals.
ALEXANDER, C.J., and OWENS and MADSEN, JJ., concur.
FAIRHURST, J. (concurring in part/dissenting in part).
I respectfully concur in part and dissent in part. I agree with the majority that Jeffrey Butzberger was "using" the vehicle he was driving at the time he encountered Frank Foster for purposes of coverage under T.H.E.'s underinsured motorist (UIM) policy. I disagree, however, that the record as presented supports the majority's conclusion that Butzberger's apparent attempt to rescue Foster constituted use of Foster's truck for purposes of coverage under Allstate's UIM policy. I would remand the case to the trial court for further proceedings on whether Butzberger was covered by the Allstate policy because he was "in" or "on" Foster's truck.
This court has not critically examined the four-part test adopted in Rau v. Liberty Mutual Insurance Co., 21 Wash.App. 326, 331, 585 P.2d 157 (1978), for determining when a person is using a vehicle for purposes of UIM coverage. See majority at 693-94; Sears v. Grange Ins. Ass'n, 111 Wash.2d 636, 762 P.2d 1141 (1988); Roller v. Stonewall Ins. Co., 115 Wash.2d 679, 801 P.2d 207 (1990). Division Two of the Court of Appeals has examined the test and concluded:
[T]he issue in such cases may be generally stated: Whether a common sense understanding of the particular use at issue indicates a connection exists between the injured person and the insured vehicle, thus bringing the event within the reasonable expectations of the insured when contracting for coverage of persons using the insured vehicle.
Cherry v. Truck Ins. Exch., 77 Wash.App. 557, 565, 892 P.2d 768 (1995). I agree that a *703 commonsense understanding of the reasonable expectations of the parties to an insurance contract should guide our analysis of when a person is using a vehicle for UIM purposes.[1] Using this approach, I agree we should abandon use of the vehicle orientation factor entirely. Unlike the majority, however, I would limit application of the essential transaction factor to cases involving specialty vehicles.

I.

Claim Against T.H.E.
I agree with the majority's conclusion that Butzberger was using Cascade Distributing's vehicle for purposes of coverage under T.H.E.'s UIM motorist policy. I disagree, however, with its application of Rau's essential transaction factor. While the essential transaction factor is useful in cases involving specialty vehicles, it is not necessary to determine whether activities related to the normal use of the vehicle as a vehicle are within the contemplation of the parties to an insurance contract.
As articulated in Rau, the essential transaction factor requires that the injured person "be engaged in a transaction essential to the use of the vehicle at the time." Rau, 21 Wash.App. at 334, 585 P.2d 157. Unfortunately, Rau's formulation of the essential transaction factor fails to capture the critical distinction between use of the vehicle as a vehicle and use of the vehicle for some other special function. Owens, the case cited by Rau as the source for the essential transaction factor, makes this point precisely: "[A]lthough use of the stretcher to convey Mrs. Mason from her home to the waiting ambulance was not a necessary incident to use of the automobile as a motor vehicle, it was an essential transaction in connection with use of the automobile as an ambulance." Owens v. Ocean Accident & Guar. Corp., 194 Ark. 817, 109 S.W.2d, 928, 930 (1937) (emphasis added).
Similarly, Booker, which is also cited in Rau, looks to the use of a garbage truck as a garbage truck. It states:
In defining the word "use" of the garbage truck, we must look to the contemplation of the parties in entering into the insurance contract. It is clear from the insurance contract that this vehicle was to be used in the business of "Sanitary Pick Up".... Common sense tells us that the parties certainly contemplated that the garbage truck would be loaded and unloaded and that the garbage to be loaded on said truck would be hauled to the truck... and that, in many instances, it would be necessary for the driver to walk down the side of the road near his truck in order to collect the garbage.
Hartford Accident & Indem. Co. v. Booker, 140 Ga.App. 3, 230 S.E.2d 70, 73 (1976), quoted in Rau, 21 Wash.App. at 332-33, 585 P.2d 157. See also Cherry, 77 Wash.App. at 566, 892 P.2d 768 (analyzing use of a vehicle as an emergency tow truck).
The essential transaction factor is useful in these cases because they involve specialty vehicles engaged in activities that would not be within the purview of the risk of a vehicle insured for normal highway use. Thus, while the essential transaction factor is useful for determining what activities beyond the normal activities associated with vehicle travel may have been in the contemplation of the parties to an insurance contract, that factor is not necessary for determining what activities are normal incidents of driving a vehicle.[2]
*704 Rau's adoption of this factor in a case involving a delivery truck driver asking for directions was misplaced, and led to the inappropriate requirement that the essential transaction factor must be satisfied in every case. Although driving directions may be especially important for a delivery truck driver, asking for driving directions is a normal part of driving any vehicle. The decision in Rau does not depend on the fact that the vehicle was a delivery truck. Instead, stopping to ask for directions during a journey is the kind of activity that common sense tells us would be reasonably contemplated by the parties to a standard automobile insurance contract, not just policies covering delivery trucks. See Rau, 21 Wash.App. at 334-35, 585 P.2d 157.
In this case, Foster's vehicle flipped over and came to rest in the middle of the interstate on which Butzberger was driving to work. Butzberger stopped to ask if Foster needed assistance and was struck and killed within seconds of stopping. I would hold that it would be an unreasonably narrow interpretation of the contemplation of the parties of an automobile insurance contract to conclude that it is uncommon for a driver to stop and offer assistance to the driver of a disabled motor vehicle, and thus outside the purview of the risk insured against.[3] Like stopping to ask for directions, stopping to inquire whether a driver whose vehicle is disabled in the roadway needs assistance is a normal incident to using a vehicle as a vehicle. The essential transaction factor, while useful in the context of specialty vehicles, is not necessary to resolve this case.

II.

Claim Against Allstate
I disagree with the majority's conclusion that Butzberger's apparent attempt to assist Foster should be considered use of Foster's vehicle. The majority holds, for the first time, that a person who has never made, and will never make, actual use of an insured vehicle can nevertheless be considered to be using the vehicle for UIM coverage. This result is inconsistent with a commonsense understanding of the reasonable expectations of the parties to an insurance contract.
Factor one of the Rau test requires "a causal relation or connection between the injury and the use of the insured vehicle." Rau, 21 Wash.App. at 334, 585 P.2d 157 (emphasis added). Since the Rau test was intended to determine whether a vehicle is being used at the time of the accident, the use referred to in factor one necessarily requires actual use, in the sense of operating or riding as a passenger in the vehicle, prior to the injury. Rau, the cases cited therein, Roller, and Cherry all involve a determination of when a person who had previously been using a vehicle, in the conventional sense of operating the vehicle, would be considered to still be in the process of using the vehicle for purposes of UIM coverage. As Cherry correctly notes, application of factor one to establish when use begins simply begs *705 the question. Cherry, 77 Wash.App. at 562 n. 3, 892 P.2d 768.
Although the majority acknowledges that no Washington case has applied the Rau analysis to a situation where the claimant did not make prior actual use of a vehicle, the majority cites to Owens and Detweiler v. J.C. Penney Casualty Insurance Co., 110 Wash.2d 99, 109, 751 P.2d 282 (1988), to support the notion that the Rau factors are appropriate for determining when use begins. Majority at 696-97. In Owens, however, the court found only that "[t]he transportation of sick persons from bed to street curb was a necessary incident to the conduct of [the ambulance company's] business." Owens, 109 S.W.2d at 929. The court held that the ambulance, which had been driven to the scene, was still being used for purposes of the automobile insurance policy when the accident occurred, but the court did not discuss use of the vehicle by the injured woman. Id. Thus, Owens does not provide a foundation for determining when use begins.
In Detweiler, the court found use where a man was injured by bullet fragments after shooting at his own truck to prevent the truck from being driven off. Detweiler, 110 Wash.2d at 101, 751 P.2d 282. Detweiler, however, was decided before this court adopted the Rau factors, and employed a much broader test than is currently used in Washington. Id. at 109, 751 P.2d 282 ("it is only necessary that there be a causal connection.... Here, the pickup causally contributed to the claimant's injuries when the bullets struck the pickup ...." (footnote omitted)). In addition to being decided before we adopted the Rau test and employing a different standard, the factual situation present in Detweiler is simply not analogous to the present case. I disagree with the majority's conclusion that Detweiler provides a sound basis upon which to depart from the factual circumstances of cases applying the Rau test.
In this case, Butzberger was in the course of a journey, his commute to work, when he stopped to check on Foster. The vehicle Butzberger was literally using was the vehicle owned by Cascade Distributing, which is the vehicle he was operating when he came upon the scene of Foster's accident. In contrast, Butzberger never actually used Foster's vehicle. While it is reasonable to presume that Butzberger intended to continue his journey in Cascade Distributing's vehicle after checking on Foster, it is clear that he had no intention of ever making use of Foster's truck. Even ignoring that Foster's truck was on its side and could not be driven at all, had Butzberger been able to successfully assist Foster, it would have been Foster, not Butzberger, who would have resumed literal use of Foster's truck.
Despite the fact that Butzberger had never used, and would never use, Foster's vehicle, the majority departs from the factual circumstances of prior cases to hold that the Rau test can be used to establish when use begins. I disagree and would hold that the test should be employed exclusively for determining when a break in literal use should still be considered use for purposes of UIM coverage and should not be employed to establish use where the party claiming coverage has neither driven nor been a passenger in the vehicle.
Although I would not hold that Butzberger was "using" Foster's vehicle under the Rau test, entry of summary judgment in favor of Allstate was improper because a material issue of fact exists regarding whether Butzberger was "in" or "on" Foster's truck. Conflicting evidence was presented to the trial court regarding Butzberger's physical position with respect to Foster's truck. The police report and one of the accident witnesses suggest that Butzberger was on or leaning into Foster's truck. Foster's declaration, on the other hand, suggests that Butzberger was standing next to the truck. If Butzberger was "in" or "on" Foster's truck, his estate is entitled to coverage under the plain language of Foster's insurance policy through Allstate.[4] Accordingly, I would remand the case to the trial court for further proceedings on this issue.

*706 III.
I would reverse the Court of Appeals and affirm the trial court's ruling that the T.H.E. policy provided UIM coverage for Butzberger. I would remand the case to the Court of Appeals to determine whether T.H.E. established a valid UIM waiver. I would also reverse the entry of summary judgment in favor of Allstate and remand for trial on whether Butzberger was "in" or "on" Foster's truck.
NOTES
[1] What Butzberger did in those 30 to 45 seconds while talking to Foster is unclear. According to the police report: "[Foster] said that it was a matter of seconds that he saw a man leaning through the drivers [sic] window asking him how they were going to get him out of the car." Suppl. Clerk's Papers (SCP) at 289. One of the accident witnesses declared: "When the accident occurred involving Mr. Butzberger, Mr. Butzberger was either on or within one foot (1') of the overturned truck, attempting to assist the truck's occupant." Clerk's Papers (CP) at 12. Foster submitted a declaration five years after the accident that states:

5. At no time did Butzberger get inside or attempt to get inside my vehicle. While talking to me he was standing a few feet away from the vehicle and looking inside the driver's door window.
6. At no time did Butzberger stick his hand, head or any other part of his body into my vehicle or through my window.
7. Butzberger was not touching my vehicle when the other vehicle smashed into it. In fact, he had started moving away from my vehicle seconds before the impact.
SCP at 457.
[2] Butzberger's estate released Phillips from liability after his insurance company tendered its $50,000 policy limit and submitted a declaration from Phillips that his assets were exempt from execution.
[3] In Roller we held that because the injury was caused by an intentional act and not by accident, UIM coverage did not apply. Roller, 115 Wash.2d at 686, 801 P.2d 207. Nonetheless we went on to apply the Rau four factors and concluded Daniel Roller did not satisfy the fourth factor, reasoning that standing in the street to write down a license plate number was not essential to the use of the vehicle Roller had been riding in. Id. at 687-89, 801 P.2d 207.
[4] A close examination of Rau reveals that although the court required application of the vehicle orientated factor, the court did not apply it. The court concluded:

The driver had left the truck to seek directions as to where to make a delivery, and was returning to his truck and was 20 feet from it at the time he was struck by the uninsured motorist.
.... For the reasons discussed, we hold that the truck driver was using the insured truck at the time he was injured....
Rau, 21 Wash.App. at 334-35, 585 P.2d 157.
[5] Allstate contends the consequence of rejecting its stranger argument would lead to UIM coverage where a person is injured while engaging in the following activities: (1) standing next to a vehicle talking to an occupant of the vehicle, (2) walking toward a vehicle intending to get in, (3) taking a photograph of the vehicle, (4) taking money from an occupant of the vehicle, (5) burglarizing the vehicle, (6) vandalizing the vehicle, (7) taking money from an occupant at a toll booth or parking lot, and (8) directing the vehicle in traffic. It is hard to imagine that after applying the causal connection, geographic proximity and essential transaction factors a court would conclude that a named insured would reasonably expect UIM coverage under the insured's policy to extend to many of these activities. This is made clear by the fact that most of these activities are not essential to the use of the vehicle.
[6] Justice Bridge's contrary conclusion relies in part on Roller, 115 Wash.2d at 679, 801 P.2d 207. Concurrence/dissent (Bridge, J.) at 701. But Roller is distinguishable because there the other driver intentionally rammed into the vehicle in which Roller was riding until the bumpers locked, 115 Wash.2d at 681, 801 P.2d 207, and the record did not suggest Roller intended to return to the vehicle. Here, however, there is every indication Butzberger intended to proceed in his vehicle, and the rescue effort was merely part of the process of his ongoing travel.

Justice Bridge's discussion of United States Fire Insurance Co. v. Parker, 250 Va. 374, 463 S.E.2d 464 (1995) is also unpersuasive. Concurrence/dissent (Bridge, J.) at 702. There, Parker, a landscape gardener, drove herself, her co-workers, and their equipment to a work site in a company-owned pickup truck. Parker, 463 S.E.2d at 465. She parked the truck next to the site to provide a "safety barrier" to protect her and her crew from passing traffic and to allow them to hear a two-way radio inside the truck. Id. Parker was struck and injured by a speeding vehicle while she was digging a hole in a flower bed 12 to 15 feet from the truck. Id. The court held that Parker was not using the truck at the time of her injury because she was not engaged in a transaction essential to the use of the truck. Id. at 466.
Here, as in Parker, Butzberger was using his vehicle as a means of transportation to work. Unlike Parker, however, Butzberger was struck and killed while still in the process of driving to work. Parker on the other hand had already arrived at her jobsite, parked the insured truck, and was working when she sustained her injuries. Thus although Justice Bridge correctly states, "Parker was not engaging in any activity at the time of her injury that directly pertained to her particularized use of her employer's truck as a means of transportation to and from the jobsite[,]" concurrence/dissent (Bridge, J.) at 702, the same cannot be said of Butzberger.
[7] RAP 13.7(b) provides in relevant part:

If the Supreme Court reverses a decision of the Court of Appeals that did not consider all of the issues raised which might support that decision, the Supreme Court will either consider and decide those issues or remand the case to the Court of Appeals to decide those issues.
[1] The majority attempts to distinguish United States Fire Insurance Co., reasoning that "[u]nlike Parker, however, Butzberger was struck and killed while still in the process of driving to work. Parker on the other hand had already arrived at her jobsite, parked the insured truck, and was working when she sustained her injuries." Majority at 698 n.6. The majority's reasoning is not compelling. Here, Butzberger was not struck and killed "while still in the process of driving to work." Id. Rather, like Parker, Butzberger parked and exited Cascade Distributing's vehicle and engaged in rescue activities related to Foster's vehicle when he sustained his injuries.
[1] Rau and the cases cited therein agree that the essential inquiry for determining use is "`the contemplation of the parties in entering into the insurance contract.'" Rau, 21 Wash.App. at 332, 585 P.2d 157 (quoting Hartford Accident & Indem. Co. v. Booker, 140 Ga.App. 3, 7, 230 S.E.2d 70, 73 (1976)); see Federated Mut. Implement & Hardware Ins. Co. v. Gupton, 241 F.Supp. 509, 514 (E.D.S.C.1965) (quoting Am. Fire & Cas. Co. v. Allstate Ins. Co., 214 F.2d 523, 525 (4th Cir.1954) ("`It cannot be said that the employment of the vehicle in such a manner was so unusual as not to have been within the contemplation of the parties to the insurance contract'")), aff'd, 357 F.2d 155 (4th Cir.1966); Owens v. Ocean Accident & Guar. Corp., 194 Ark. 817, 109 S.W.2d 928, 930 (1937) (focusing on whether the "transaction ... would fall within the purview of the risk insured against").
[2] Justice Bridge's discussion of the "particularized use of the insured vehicle" fails to recognize this important distinction. Concurrence/dissent at 701-02. Instead, the concurrence/dissent leans on the essential transaction factor to lump landscape gardening with stopping to check on the driver of a vehicle overturned in the middle of the roadway. See id. at 701; United States Fire Ins. Co. v. Parker, 250 Va. 374, 463 S.E.2d 464 (1995). A factor created to assess the particularized use of a vehicle as an ambulance, garbage truck, or tow truck is not necessary to determine what is in the contemplation of the parties when the injury occurred as part of an activity common to operation of a vehicle as a vehicle, and does not prevent finding a commonsense distinction between drivers that garden by the side of the road and drivers that stop in response to witnessing a motor vehicle accident.
[3] I also agree with the majority's conclusion that Butzberger was within reasonably close geographic proximity to Cascade Distributing's vehicle. Butzberger strayed no further from Cascade Distributing's vehicle than was necessary to check on Foster. While I agree Butzberger satisfies the geographic proximity factor, I share the unease expressed by the court in Booker regarding the delineation of "arbitrary distances." We have not had occasion to address cases that involve drivers or passengers who travel significant distances down a roadway before sustaining injuries from underinsured or uninsured motorists. See, e.g., Dawes v. First Ins. Co. of Hawai`i, Ltd., 77 Hawai'i 117, 883 P.2d 38 (1994) (extending coverage to a passenger struck after walking one mile from a vehicle in search of aid); Falls v. N.C. Farm Bureau Mut. Ins. Co., 114 N.C.App. 203, 441 S.E.2d 583 (1994) (extending coverage to a driver struck after walking one-half mile from vehicle in search of aid). The question of how far is too far is not present, and not decided, in this case.
[4] The Allstate policy covers "[a]ny person while in, on, getting into or out of an insured motor vehicle." Supplemental Clerk's Papers at 502.